CAROLYN HARDY *vs.* WILLIAM M. LEE, City Treasurer.

MAY 1, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Schools.*

Charter of the city of Cranston provides that the city council shall "fix the salaries of its employees except as herein provided," the proviso being: "*Provided,* that the expenditures and money appropriated for the support and maintenance, improvement and keeping in repair of the school property shall be by and under the direction of the school committee of said city."

*Held,* that the power to engage teachers accompanied by the power to fix their salaries was vested in the school committee.

*(2)  Schools.  Contracts.  Fiscal Year.*

The fixing of the fiscal year of a city is purely a matter of convenience in the handling of its financial and business transactions and exerts no force upon a contract made with a teacher for her services by the school committee which was by charter vested with the authority to engage and fix the compensation of the teachers, nor does the right to collect the salary covered by an order of the school committee expire with the close of the fiscal year.

*(3)  Schools.  Contracts.  Fiscal Year.*

Where there was a sufficient amount in the hands of a city treasurer, from the appropriation for the past fiscal year, to pay a salary order of a school committee for services rendered during that year, the question whether the treasurer had authority to pay such order from the appropriation for the following fiscal year is not decided.

MANDAMUS.     Heard    on    appeal    of    respondent    and dismissed.

VINCENT, J.   This is a petition for a writ of mandamus against the City Treasurer of the City of Cranston, asking that he be directed to pay to the petitioner the amount of an order, drawn by the school committee of that city upon him, for the balance of salary due to her as a school teacher. The matter comes before this court upon the appeal of the

respondent from the final judgment of the Superior Court granting the petition. The petitioner alleges that she entered into a contract with the school committee to teach in the public schools of Cranston for the school year commencing September 11, 1911, and ending June 21, 1912, at a salary of $624; that she performed her duties as such teacher and from time to time received from the treasurer sums of money, aggregating $438.70, on account of said salary; that on May 6, 1912, the school committee voted that the sum of $14 be paid to the petitioner on or before May 10, 1912, as a further payment on account of salary; that an order signed by the chairman of the school committee was drawn for that amount upon the treasurer; that William M. Lee was the duly elected and qualified treasurer of said Cranston and was acting as such and discharging the duties of that office; that on said May 6, 1912, and since that date, he had funds in hand for the support and maintenance of public schools in said Cranston and that such funds were sufficient to enable said treasurer to pay the order of the petitioner amounting to $14; that said treasurer, upon demand made for the payment of said order, refused to pay the same, alleging as a reason for such refusal that the said order was not an order from the city auditor, countersigned by the mayor, directing him to make such payment.

The respondent in his answer alleges that the order drawn by the school committee is addressed to the city auditor and the city treasurer and that the said order was not endorsed, approved, countersigned, ratified or confirmed by the city auditor; that the city treasurer is subject to the provisions of the ordinances of the city and cannot pay an order addressed to the city auditor until it has been ordered paid by said auditor or the city council and that said city auditor had not ordered the order of the school committee paid, nor had the council commanded it; and that said order does not show out of which appropriation it should be paid nor for what period of service it covered. The answer further alleges that the treasurer has paid said teacher all sums of money due her for the fiscal year; and

that there were no funds on May 6, 1912, available, to pay the order in question, in his hands, there having been another order drawn upon him for the sum of $518.22 for money due the Eastern Coal Company, which reached him prior to the order in question, and which more than covered the balance in his hands of funds appropriated for schools. for the fiscal year of 1911-12. It further alleges that the fiscal year began the 3d Monday in April, 1911, and ended. on the 3d Monday of April, 1912, and finally that the city council by resolution in accordance with the city charter fixed the salaries of teachers, including the petitioner, at $600 for the fiscal year ending the 3d day of April, 1912, and that the petitioner had received that salary in full; that the school committee claimed to have raised this to $624 in the June following and that the city council, on the 3d Monday of April, 1912, fixed the petitioner's salary at $624 for the ensuing year, and that she had received her proportional share up to the time of the bringing of this petition.

The respondent does not dispute the facts stated in the petition except as to the existence of funds in the hands of the treasurer to pay the order in question, and upon this. point testimony was offered by the petitioner in the Superior Court.

The respondent in and by his brief and argument thereon. claims (1) that the power to fix salaries resides in the city council and not in the school committee; (2) that the school. committee is restricted in its expenditures to the amount. available for school purposes; (3) that the treasurer was without sufficient funds from which he could legally pay the order in question; (4) that it was beyond the power of the school committee to require the respondent, as treasurer, to pay out from the funds appropriated for one fiscal year for the services of a teacher rendered during the preceding fiscal year; (5) that such an order must be audited by the city auditor before payment can be required; and (6) that, mandamus does not lie in the present case.

The charter of the City of Cranston provides that the city council "shall fix the salaries of its employees except:

as herein provided." The proviso in said charter, which is applicable to the present case, is in these words: "*Provided, however*, that the expenditures and money appropriated for the support and maintenance, improvement, and keeping in repair of the school property shall be by and under the direction of the school committee of said city, which said committee shall annually make a detailed report in writing to said council of all receipts and expenditures made by it."

(1)

The respondent does not claim that the school committee is without power to engage teachers and specify their term of service, but contends that the salary of such teachers can only be fixed and determined by the city council. We do not think that this position of the respondent is tenable. It was evidently the intention of the framers of the charter, and of the legislature in granting it, that the care, management, and control of the public schools should be vested in the school committee. It would be of little use to give the school committee the power to engage teachers unless it should be accompanied by the power to fix their salaries. The school committee would not be likely to make much progress in obtaining suitable teachers without the ability to assure them in advance of a definite and satisfactory compensation for their services. To assign the selection of the teacher to one body and the fixing of the salary to another would offer many opportunities for friction and disagreement which might defeat the practical and beneficial effect of the whole system.

The charter of the City of Cranston was granted in 1910. At that time the school committee of the town of Cranston was discharging its duties and conducting its business under and by virtue of the authority of the General Laws of 1909. An examination of these laws, and especially of Section 11 of Chapter 66 and Section 9 of Chapter 67, shows that the school committee was practically transferred, through the grant of the charter, from the town to the city without any material change of powers or duties. Under these statutes, the entire care, control and management of all the public school interests

was vested in the school committee of the several towns and they were authorized to draw all orders for the payment of their expenses. We think that the order for $14, drawn by the school committee in favor of the petitioner, was a good and valid order.

The respondent claims that the petitioner was not entitled to the sum of $14 because she had been actually paid for all the services which she had rendered to the city up to the time that the order for that amount was given to her by the school committee. It appears that the school committee in June, 1911, raised the teachers' salaries from $600 to $624 and the claim of the respondent that the petitioner had been fully paid rests upon the contention that the school committee, having no power to fix salaries, had no power to raise them which presents the same question which we have already considered.

At the hearing in the Superior Court the petitioner called the respondent as a witness for the purpose of showing that the latter, at the time when the demand was made upon him to pay the order for $14, had sufficient funds from which he might have paid the same, and he testified as follows: "5 Q. On May 6th, 1912, will you state what funds were available for the payment of bills for the School Committee? A. I will say in reply to that question that on that date the funds, or, at least, the appropriation and the credits against which school orders might be charged were divided into two classes, those for the fiscal year ending April 15th, 1912, and those for the fiscal year commencing April 15th, 1912. I will say that in the first class on May 6th, for the fiscal year ending April 15th, 1912, there was an apparent balance of $458.26. If I am allowed to explain the word 'apparent balance.' 6 Q. Go ahead. A. I will say that an order was presented to me from the City Auditor, signed by the Mayor, previous to that date for $518.22. This order, as it was in excess of the balance on hand at that time, was returned by me to the City Auditor with the remark, 'Not sufficient funds to pay the order.'

With that exception I will say the apparent balance on May 6th, 1912, of the appropriation and credits for the fiscal year ending April 15th, 1912, was $458.26.   7 Q.  Well, now, were there other funds at that time available?   A.  On May 6th, 1912, of the appropriations and credits available for the payment of school orders for the fiscal year commencing April 15th, 1912, there were unexpended $79,355.88. "

(2)     From this testimony of the respondent it appears that he had in hand the sum of $458.26 from the appropriation for schools for the fiscal year ending April 15, 1912, and for the fiscal year beginning April 15, 1912, the sum of $79,355.88. The respondent, however, contends that he has no authority to pay a teacher's salary from the balance of the appropriation for the fiscal year ending April 15, 1912, after the expiration of that year, without a special appropriation and order of the city council and that he has no authority to pay such salary covering services rendered during the fiscal year ending April 15, 1912, from the appropriation for the fiscal year commencing April 15, 1912.   The fixing of the fiscal year is purely a matter of convenience in the handling of the financial and business transactions of the city and exerts no force or influence upon a contract made with a teacher for her services.   The school committee had authority to engage teachers, fix their compensation, and determine their term of service.   The obligation thus arising to the city to pay the salaries of teachers is not released or varied by the fixing of the fiscal year, nor does the right to collect the salary covered by the order expire with the close of the fiscal year.   It is a contract which the city has entered into through its properly authorized committee and as such it must be recognized and carried out.   It appearing from the testimony of the treasurer that there was a sufficient amount remaining in his hands, from the appropriation for the fiscal year ending April 15, 1912, to pay the order of the petitioner, the further contention that the treasurer had no authority to pay such order from the appropriation for the fiscal year beginning April 15, 1912, becomes immaterial to the present case and need not be discussed.

The respondent's appeal is dismissed, the judgment of the Superior Court is affirmed, and the case is remanded to said court for further proceedings.

*Richard W. Jennings,* for petitioner.
*Frank H. Wildes,* for respondent.