J. Colin Dawson *vs.* Joseph P. Clark, Director of Finance and City Treasurer of the City of Pawtucket.

JANUARY 5, 1962.

Present: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is a bill in equity brought by a taxpayer of the city of Pawtucket to enjoin the respondent from making payment on a contract of insurance heretofore awarded and to cancel it. After a hearing on bill, answer and proof by a superior court justice a decree was entered denying and dismissing the bill of complaint. It is before us on the complainant's appeal therefrom.

It is established by the record that complainant is a property owner in the city of Pawtucket whose occupation is that of an insurance consultant. The respondent is director of finance in said city and in such capacity serves as a member of the central purchasing board.

It further appears that on September 23, 24 and 26, 1960, a notice that the purchasing board was soliciting "sealed proposals for group life insurance for the School Department" was published in The Pawtucket Times, a newspaper having a daily circulation in Pawtucket. The notice further notified the public that specifications were available at the office of the city purchasing agent and that the proposals or bids would be opened publicly in the city council chambers on October 5, 1960 at 3 p.m. It was specified that a bid bond or certified check in the amount of 5 per cent must accompany all bids.

The complainant testified that he picked up a set of specifications and submitted a sealed bid together with a certified check as required on behalf of the Boston Mutual Life Insurance Company. The record discloses that three sealed bids, including complainant's, were received and duly opened at the time and place specified. Two of them, one of which was complainant's, when computed on an annual basis with allowance for dividends and/or loss, experience proved to be in close competition. The bid submitted by complainant, however, was allegedly slightly less than that of the other to whom the contract was awarded. The third bidder was substantially higher.

It is undisputed that someone acting on behalf of the

school committee requested information from Edwin J. Carty, purchasing agent for the city, as to a bid opening date. The communication was received by telephone and the purchasing agent was unable to recall whether the request was made by Mr. Varieur or Mr. Creamer. Mr. Carty testified that after furnishing the information he received the specifications for the group insurance bids from the school committee and he referred the specifications to the central purchasing board. It appears that by the terms of the Pawtucket home rule charter the central purchasing board is authorized to advertise all bids.

It further appears from the record that following the opening of the bids all three were forwarded to the school committee. No certified check or bid bond, however, accompanied the proposal of the successful bidder, since none was submitted. Moreover, the information accompanying the several proposals did not conform in all respects to the specifications prepared by the school committee. In the view we take of the question before us, however, we deem it unnecessary to pass upon the nature of the information either as submitted or requested. Nor would it serve any material purpose to pass upon complainant's contentions as to the discrepancies involved or the illegality of the award. On October 18, 1960 the school committee voted to award the contract "to the lowest responsible bidder which appears to be the Washington National Insurance Company."

The following day the vote of the school committee was communicated to the purchasing agent who included it on the docket of the central purchasing board's meeting which occurred on the same day, October 19, 1960. The pertinent portion of the minutes of that meeting discloses that the board concurred with the recommendation of the school committee and awarded the contract in accordance therewith. The following day a purchasing order was issued.

The trial justice denied and dismissed the bill of complaint and gave as his reason, inter alia, that jurisdiction for awarding the contract was exclusive with the school committee and that whatever action may have been taken by the finance director, the purchasing agent or the purchasing board was on behalf of the school committee; in short, that each performed a ministerial act and was without discretion to do otherwise. We do not deem it necessary to consider those reasons given by the trial justice in reaching his decision which relate to the status of complainant, or the merits of the respective bids.

Following the entry of the decree denying and dismissing his bill of complaint, complainant duly prosecuted an appeal to this court. He assigns the usual reasons therefor as errors, namely, that the decree is against the law, the evidence and the weight thereof.

The complainant contends that by the provisions of the Pawtucket home rule charter, so called, awards for all purchases of goods or services must be made to the lowest responsible bidder. Assuming without deciding that the provisions of the charter are as plenary and mandatory as is contended by complainant, those provisions are not binding on the school committee in carrying out the duties which have been delegated to them by the general assembly. It is well settled that school committees in carrying out the functions assigned to them by the legislature are exercising a portion of the state's sovereignty. *Gray* v. *Wood*, 75 R. I. 123; *City of Pawtucket* v. *Pawtucket Teachers' Alliance*, 87 R. I. 364. It is equally well settled that once an appropriation is made by a city council or town meeting for use of the school committee, the expenditure of those funds so appropriated is within the committee's sole and exclusive jurisdiction. *Times Publishing Co.* v. *White*, 23 R. I. 334, and *Bailey* v. *Duffy*, 45 R. I. 304.

Following the adoption of the Pawtucket home rule charter, the general assembly validated such portions thereof

as it deemed advisable by the enactment of P. L. 1953, chap. 3238. We have carefully examined the provisions of that act, together with subsequent amendments, and have determined that nowhere therein or by any provision thereof, expressed or implied, has the legislature authorized the surrendering of school committee prerogatives to the central purchasing board or any other agency established by the charter. See *Bray* v. *Barry*, 91 R. I. 34, 160 A.2d 577.

General laws 1956, §16-2-18, reads as follows:

"The selection of teachers and election of superintendent, in such towns as do not unite for the employment of a superintendent, and the entire care, control, and management of all the public school interests of the several towns, shall be vested in the school committee of the several towns, and they shall also draw all orders for the payment of their expenses."

In the absence of legislative authority to the contrary the foregoing provisions would be applicable to the city of Pawtucket. Not unmindful, however, that at the time the home rule charter became effective Pawtucket was functioning under a legislative charter, we have carefully examined P. L. 1885, chap. 474, entitled "An Act To Establish The City of Pawtucket." The applicable provision of that chapter is sec. 7, clause 2, which provides as follows:

"The city council may levy and collect taxes for all purposes for which towns or cities are authorized to levy and collect taxes, and appropriate and expend the same as they are or may be authorized by law; provided, however, that the expenditure of the moneys appropriated for public schools shall be by and under the direction of the school committee of said city in the same manner that the school committee of the town of Pawtucket have heretofore had direction of like expenditures in said town * * *."

Clearly then respondent is not a proper party, which in effect was the decision of the trial justice.

462

The complainant argues, however, that if the school committee were not subject to the provisions of the home rule charter in the first instance, it became so when it invoked those provisions by requesting respondent and the central purchasing board to advertise for bids and inferentially award the contract. The trial justice did not so construe the action of the school committee. Nor do we. The record discloses that the specifications were prepared by the school committee; that the bids when received and opened were forwarded to the committee by the central purchasing board; and that the committee after apparently considering the three bids submitted made its determination as to the lowest responsible bidder, voted to award the contract to such bidder and so advised the board. It seems clear that the committee was not attempting to surrender its prerogative, but was merely utilizing the facilities of the purchasing agent, the board and whatever other finance officers are normally concerned with the keeping of the city books and disbursement of funds.

Indeed no other construction is tenable. The school committee could not delegate the jurisdiction conferred upon it by the legislature in the absence of legislative authority to do so. See *In Re Appeal from School Committee of Pawtucket,* 27 R. I. 596.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Zucker and Winsten, Harold H. Winsten,* for complainant.

*John A. O'Neill,* City Solicitor, *Harvey J. Ryan,* Assistant City Solicitor, for respondent.