**Joseph PANZARELLA, a minor p. p. a. Blanche Panzarella, his next friend and parent, Plaintiffs,**

v.

**John K. BOYLE, Individually and as Superintendent of Schools of the Smithfield School System, et al.**

**Civ. A. No. 74–241.**

United States District Court, D. Rhode Island.

Dec. 22, 1975.

Barry Kusinitz, and Donald Coblentz, of R. I. Legal Services, Providence, R. I., for plaintiffs.

John H. Hines, Jr., Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

Plaintiff Joseph Panzarella, a minor, brings this action through his mother for injunctive relief and damages of $12,000 based upon his claim that the defendants twice suspended him from Smithfield High School in 1973 and 1974 without providing him the procedural due process required by the Due Process Clause of the Fourteenth Amendment to the Unit-ed States Constitution. The defendants collectively have filed a motion to dismiss, contending that: (1) the Court lacks jurisdiction over the defendant Smithfield School Committee ("the Committee") and each of its members, also individually named as defendants; (2) plaintiff's action is premature because he has not exhausted the administrative remedies available under Rhode Island General Laws § 16–39–2; and (3) the School Committee is immune from liability for the monetary relief sought because plaintiff has failed to comply with the notice provisions of R.I.G.L. § 45–15–5. See notes 9, 11, infra.

I

The defendants assert in their motion to dismiss that the Court lacks jurisdiction over the School Committee as a unit and that, as a result, also lacks jurisdiction over its individual members.

Despite the defendants' contention that jurisdiction over the individual Committee members is dependent upon jurisdiction over the Committee, it is clear that these individuals are "persons" within the meaning of 42 U.S.C. § 1983 [1] and amenable to suit for both injunctive relief and damages under 28 U.S.C. § 1343.[2] Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). See also Wood v. Strickland, 420 U.S. 308, 95

---

1. 42 U.S.C. § 1983 provides:

"§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 28 U.S.C. § 1343 provides:

"§ 1343. Civil rights and elective franchise

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights including the right to vote."

S.Ct. 992, 43 L.Ed.2d 214 (1975). As a result, the Court has jurisdiction over the individual School Committee members under 28 U.S.C. § 1343, and that aspect of the defendants' motion to dismiss must be denied.[3]

■ Jurisdiction over the School Committee as an entity presents a somewhat thornier problem. It is true that a municipality is not subject to suit under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, because it is not a "person" within the meaning of § 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape, supra.* There is much authority to support the proposition that a school committee, as a political subdivision of a state, is likewise not a "person" within the meaning of § 1983.[4] The plaintiff does not urge a contrary ruling upon the Court, but instead contends that the Court has general federal question jurisdiction under 28 U.S.C. § 1331[5] to hear the claim against the Committee since his claim is based upon an alleged constitutional deprivation with consequent damages in excess of $10,000. To resolve this issue, we must consider whether plaintiff has met each of the prerequisites for general federal question jurisdiction as provided in 28 U.S.C. § 1331(a).

■ First, has a constitutional deprivation been alleged? In his complaint, the plaintiff alleges that he was subjected to two lengthy, summary suspensions from Smithfield High School in violation of his constitutional right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution. There can be no question that this claim presents a substantial federal question arising under the Constitution. In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the United States Supreme Court held that a suspension of ten days or less constituted a deprivation of a student's "property" interest in education and "liberty" interest in reputation sufficient to require protection under the Due Process Clause. The suspensions at issue in the instant case are alleged to have continued in excess of five months and one month, respectively. Summary suspensions of this duration, if proved at trial, would obviously exceed in severity the constitutional deprivations recognized in *Goss.*

Second, is this constitutional deprivation cognizable under 28 U.S.C. § 1331? In *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court ruled that the plaintiff therein had suffi-

---

**3.** For reasons which follow, the Court concludes that it has jurisdiction over the individual Committee members pursuant to 28 U.S.C. § 1331 as well. *See* note 5, *infra.*

**4.** *See Lopez v. Williams,* 372 F.Supp. 1279, 1294–1295 and n. 10 (S.D.Ohio, 1973) (three-judge court), *aff'd on other grounds sub nom. Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) and cases cited therein. *See, e. g., Patton v. Conrad Area School District,* 388 F.Supp. 410, 417–418 (D.Del.1975); *Harkless v. Sweeny Independent School District,* 388 F.Supp. 738, 746 (D.Tex.1975); *Weathers v. West Yuma County School District R–J–1,* 387 F.Supp. 552, 555–556 (D.Colo. 1974); *Brown v. Board of Education of City of Chicago,* 386 F.Supp. 110, 121 (N.D.Ill.1974); *Pelisek v. Trevor School District,* 371 F.Supp. 1064, 1065 (E.D.Wis.1974); *Kelly v. Wisconsin Interscholastic Athletic Association,* 367 F.Supp. 1388, 1391–1392 (E.D.Wis.1974). *Contra Keckeisen v. Independent School Dis-*

*trict 612,* 509 F.2d 1062, 1065 (8th Cir. 1975), *cert. denied,* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51; *Courtney v. School District No. 1,* 371 F.Supp. 401, 403 (D.Wyo.1974). *Cf. Singleton v. Vance County Board of Education,* 501 F.2d 429, 432 (4th Cir. 1974) (Winter, J., concurring and dissenting, dictum).

In view of plaintiff's position, the Court assumes, without deciding, that a municipal school committee is not a "person" under 42 U.S.C. § 1983. *See Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n.1 (5th Cir. 1975).

**5.** 28 U.S.C. § 1331 provides in pertinent part:
"§ 1331. Federal question; amount in controversy; costs
 (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

ciently stated a claim under 28 U.S.C. § 1331 in alleging that federal officials had violated his Fourth Amendment rights. In a letter to the parties of April 22, 1975, this Court raised the question whether the cause of action recognized in *Bivens* is limited to alleged violations of the Fourth Amendment.[6]

■ In response, the plaintiff has cited a long list of cases [7] to support his highly persuasive and logical argument that the construction given to 28 U.S.C. § 1331 in *Bivens* properly applies to any alleged violation of a constitutionally protected interest not specifically excluded by other Congressional enactment. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Milo Community Hospital v. Weinberger*, 525 F.2d 144 (1st Cir. 1975). I will not add to the length of this opinion by retracing the analyses of these cases. It suffices to state here that the Court has carefully examined the Supreme Court's analy-

sis in *Bivens* and *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and is convinced that only the broad reading given *Bivens* in the decisions cited in note 7, *supra*, accurately reflects *Bivens'* underlying rationale. Justice Harlan's characterization of the issue presented in *Bivens* as addressing the "power [of federal courts] to award damages for violation of 'constitutionally protected interests' " *such as* the Fourth Amendment, *id.* 403 U.S. at 399, 91 S.Ct. at 2006 (Harlan, J., concurring in the judgment), is particularly instructive that the cause of action for deprivation of a constitutionally protected interest recognized in *Bivens* is not restricted to the Fourth Amendment:

"[T]he judiciary has a particular responsibility to assure the vindication of constitutional interests such as those embraced by the Fourth Amendment. To be sure, 'it must be remembered that legislatures are ultimate guardi-

6. · See *Archuleta v. Callaway*, 385 F.Supp. 384, 388 (D.Colo.1974); *Moore v. Schlesinger*, 384 F.Supp. 163 (D.Colo.1974); *Smothers v. Columbia Broadcasting System*, 351 F.Supp. 622, 626 n. 4 (C.D.Cal.1972, dictum); *Davidson v. Kane*, 337 F.Supp. 922 (E.D.Va.1972). See generally *Greenya v. George Washington University*, 512 F.2d 556, 562–563 n. 13 (D.C. Cir. 1975) (collecting cases), *cert. denied*, —— U.S. ——, 96 S.Ct. 422, 46 L.Ed.2d 369.

7. This list, as updated by the Court, includes the following cases: *Cox v. Stanton*, 529 F.2d 47 (4th Cir. 1975) (Thirteenth and Fourteenth Amendments); *Brault v. Town of Milton*, 527 F.2d 730, at 732 (2d Cir. 1975) (Fourteenth Amendment), *rev'd on other grounds*, 736 F.2d 527 (2d Cir. 1975) (en banc); *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 932 and n. 5 (10th Cir. 1975) (Fifth Amendment); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1156–1157 (4th Cir. 1974) (Fifth Amendment); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 965 and n. 47 (1973) (Fourth and Fifth Amendments), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125; *Braden v. University of Pittsburgh*, 477 F.2d 1, 7 n. 10 (3d Cir. 1973) (Fourteenth Amendment, dictum); *United States ex rel. Moore v. Koelzer*, 457 F.2d 892, 894 (3d Cir. 1972) (Fourth and Fifth Amendments); *Bethea v. Reid*, 445 F.2d 1163, 1164–1165 (3d Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (Fourth and Fifth Amendments); *Revis v. Laird*, 391

F.Supp. 1133, 1139 (E.D.Cal.1975) (First and Fifth Amendments); *Patterson v. City of Chester*, 389 F.Supp. 1093, 1096 (E.D.Pa.1975) (First and Fourteenth Amendments); *Brown v. Board of Education of City of Chicago*, 386 F.Supp. 110, 121–122 and n. 5 (N.D.Ill.1974) (Fourteenth Amendment); *Shaffer v. Wilson*, 383 F.Supp. 554 (D.Colo.1974) (Fourth and Fifth Amendments); *Gardels v. Murphy*, 377 F.Supp. 1389, 1398 (N.D.Ill.1974) (First Amendment); *Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal.1974) (Fifth Amendment); *Perzanowski v. Salvio*, 369 F.Supp. 223, 229 (D.Conn.1974) (Fourteenth Amendment); *Butler v. United States*, 365 F.Supp. 1035 (D.Haw.1973) (First, Fourth and Fifth Amendments); *Dupree v. City of Chattanooga*, 362 F.Supp. 1136, 1139 (E.D.Tenn.1973) (Fourteenth Amendment); *James v. United States*, 358 F.Supp. 1381, 1386 (D.R.I.1973), *vacated*, 502 F.2d 1159 (1st Cir. 1974) (Fourth, Fifth and Eighth Amendments, dicta); *Washington v. Brantley*, 352 F.Supp. 559, 564 (M.D.Fla. 1972) (Fourteenth Amendment, dictum); *Johnson v. Alldredge*, 349 F.Supp. 1230, 1231 (M.D. Pa.1972), *aff'd in part and rev'd in part on other grounds*, 488 F.2d 820 (3d Cir. 1973) (Fifth Amendment). *See generally* Dellinger, "Of Rights and Remedies: The Constitution as a Sword," 85 Harv.L.Rev. 1532, 1542–1543 (1972). *Cf. Lipman v. Commonwealth of Massachusetts*, 475 F.2d 565, 568 n. 7 (1st Cir. 1973) (Fourteenth Amendment, dictum—no direct reference to *Bivens*).

ans of the liberties and welfare of the people in quite as great a degree as the courts.' *Missouri, Kansas & Texas R. Co. of Texas v. May,* 194 U.S. 267, 270, 24 S.Ct. 638, 639, 48 L.Ed. 971 (1904). But it must also be recognized that the Bill of Rights is particularly intended to vindicate the interests of the individual in the face of the popular will as expressed in legislative majorities; at the very least, it strikes me as no more appropriate to await express congressional authorization of traditional judicial relief with regard to these legal interests than with respect to interests protected by federal statutes." *Id.* at 407, 91 S.Ct. at 2010 (Harlan, J., concurring in judgment). None of the decisions cited in note 6, *supra,* provides any insight into the basis for their uniform conclusion that *Bivens* has somehow singled out the constitutional rights protected by the Fourth Amendment as in greater peril or more deserving of legal redress than those rights embodied in the First, Fifth or Fourteenth Amendments, for example. Such a proposition appears completely at odds with prevailing notions of the preferred position of First Amendment rights[8] and the rationale of *Bivens* itself. *See* cases cited in note 7, *supra.*

▇ Third, has the jurisdictional minimum of § 1331 been satisfied? Plaintiff's allegation that he has suffered damages in the amount of $12,000 has not been disputed by the defendants. At issue here are two suspensions, each in excess of ten days, and their alleged injury to plaintiff's present and future education and to his reputation. The claim is by no means trivial. As the Supreme Court recognized with regard to suspensions of ten days or less in *Goss v. Lopez,*

*supra,* 419 U.S. at 575–576, 95 S.Ct. at 736:

"If sustained and recorded, [charges of misconduct] could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment.

\* \* \* \* \* \*

. . . '[E]ducation is perhaps the most important function of state and local governments.' *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), and the total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child." (Footnote omitted.)

Applying the appropriate standard, the Court is unable to conclude to a legal certainty that plaintiff's claim does not exceed the jurisdictional minimum. *Murray v. Vaughn,* 300 F.Supp. 688 (D.R. I.1969). *See* 1 Moore, Federal Practice, par. 0.92[1] at 833 (2d ed. 1974).

▇ The Court therefore concludes that it has jurisdiction over the School Committee pursuant to 28 U.S.C. § 1331(a). *See Roane v. Callisburg Independent School District,* 511 F.2d 633, 635 n. 1 (5th Cir. 1975); *Brown v. Board of Education of City of Chicago,* 386 F.Supp. 110, 121–122 (N.D.Ill.1974); *Pelisek v. Trevor School District,* 371 F.Supp. 1064 (E.D.Wis.1974). *See* note 3, *supra.*

## II

This does not end our inquiry, for the defendants contend that there are two other barriers to the maintenance of the

---

8. "Of that freedom [of thought and speech,] one may say that it is the matrix, the indispensable condition, of nearly every other form of freedom." *Palko v. Connecticut,* 302 U.S. 319, 327, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.). *Cf. Reilly v. Noel,* 384 F.Supp. 741, 748 (D.R.I.1974). Countenancing such a priority for violations of Fourth Amendment rights over other guarantees of the Bill of Rights would appear particularly surprising if

one were to contrast it with the chronological order in which the Supreme Court has selectively incorporated portions of the Bill of Rights into the Due Process Clause of the Fourteenth Amendment. *Compare, e. g., Schneider v. State of New Jersey,* 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (First Amendment), *with Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (fully incorporating Fourth Amendment).

action. The first of these is plaintiff's failure to exhaust the administrative remedies provided by Rhode Island law.[9]

 The defendants' argument is not well taken. It is clear that a plaintiff is not required to exhaust administrative remedies as a precondition to bringing an action under 42 U.S.C. § 1983. *See, e. g., Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Raper v. Lucey,* 488 F.2d 748, 751 n. 3 (1st Cir. 1973). All that a plaintiff need show in this regard is the existence of "some definitive administrative or institutional determination . . . to assure that the action complained of is final within the institution in the sense that it is ripe for adjudication." *Raper v. Lucey, supra* at 751 n. 3. Plaintiff has satisfied this requirement.

 The action against the School Committee is premised on precisely the same cause of action, albeit under 28 U.S.C. § 1331, as that against its individual members brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The only pertinent distinction between the two claims is that the School Committee is not a "person" for purposes of 42 U.S.C. § 1983.

"[A]ny case that could be brought as a civil rights case under Section 1343(3) also could be brought under the general federal question statute, Section

1331. The difference is that Section 1331 requires that more than $10,000 be in controversy while Section 1343(3) has no amount requirement." 13 Wright & Miller, Federal Practice and Procedure: Jurisdiction § 3573 at 500. *Cf. Lynch v. Household Finance Corp.,* 405 U.S. 538, 546–547, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

The Court sees no justification founded in logic or policy which would counsel it to interpret this formal distinction to require a plaintiff to exhaust administrative remedies when his civil rights action is brought under 28 U.S.C. § 1331 rather than 42 U.S.C. § 1983 and declines to do so. *Accord Dahl v. City of Palo Alto,* 372 F.Supp. 647, 649 n. 2 (N.D.Cal.1974). *See also Sullivan v. Murphy,* 156 U.S. App.D.C. 20, 478 F.2d 938, 963 (1973). In addition, the Court questions the availability of any meaningful administrative remedy since plaintiff, according to his counsel, is presently attending another school and no longer seeks reinstatement.[10]

### III

Lastly, we must consider the defendants' remaining contention that the plaintiff was required, but failed, to present his claim against the School Committee to the Smithfield Town

---

**9.** Rhode Island provides for administrative review of school committee actions in the following provisions of the Rhode Island General Laws:

"16–39–2. Appeal of school committee actions to commissioner.—

Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved.

16–39–3. Appeal to state board.—Any decision of the commissioner in such matters shall be subject to an appeal to and review by the board of education.

16–39–4. Judicial review.—Judicial review may be obtained by any aggrieved party as

provided in chapter 35 of title 42 [Rhode Island's Administrative Procedures Act].

16–39–5. Legal remedies preserved.—Nothing contained in this chapter shall be so construed as to deprive any aggrieved party of any legal remedy."

**10.** This information was presented to the Court in plaintiff's motion for leave to amend his complaint, which proposes amendments that do not alter the instant inquiry.

It further appears that under R.I.G.L. § 16–39–5, the administrative remedies provided in R.I.G.L. § 16–39–2 *et seq.,* note 9, *supra,* need not be exhausted as a prerequisite to bringing legal action based on state law. *See Demers v. Shehab,* 101 R.I. 417, 224 A.2d 380, 381 (1966), *cert. denied,* 386 U.S. 966, 87 S.Ct. 1047, 18 L.Ed.2d 116; *Izzi v. Warwick School Committee,* 82 R.I. 76, 105 A.2d 818 (1954).

Council, pursuant to R.I.G.L. § 45–15–5,[11] as a prerequisite to bringing this action against the Committee for damages.[12] Before we consider this issue which, as characterized by the defendants, narrowly focuses on the qualified immunity enjoyed by Rhode Island cities and towns, we must first determine whether the School Committee, *qua* Committee, independently is immune from liability under 28 U.S.C. § 1331. The two potential sources for such immunity are federal law and state law. We will first examine whether federal law confers any immunity from suit upon the School Committee.

## A

A number of district courts have held that an action for deprivation of constitutional rights, although properly brought pursuant to 28 U.S.C. § 1331, nonetheless fails to state a claim for which relief may be granted, Fed.R. Civ.P. 12(b)(6), when it is brought against a municipality. Their underlying

rationale would seem to apply with equal force, if at all, to other state subdivisions, such as the School Committee, not considered "persons" within 42 U.S.C. § 1983. In *Washington v. Brantley,* 352 F.Supp. 559 (M.D.Fla.1972), the court reasoned that a municipality could not be sued under § 1331 since it was exercising a portion of the state's sovereignty and as such was shielded by the Eleventh Amendment. *Id.* at 564–565. The weakness of this argument was recognized by Judge Clarie in *Perzanowski v. Salvio,* 369 F.Supp. 223 (D.Conn.1974), noting to the contrary at 231 n. 5 that:

> "[T]he immunity conferred by the [Eleventh] amendment has been held not to extend to a municipality or a municipal agency. *See* e. g., *Workman v. City of New York,* 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900); *Bennett v. Gravelle,* 323 F.Supp. 203, 216 (D.Md.) aff'd, 451 F.2d 1011 (4th Cir. 1971)."

*Cf. Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970).[13]

11. R.I.G.L. § 45–15–5 provides:

"45–15–5. Presentment to council of claim or demand against town. Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty (40) days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same."

12. In the Court's letter of April 22, 1975, the parties were asked to brief the following question:

"Assuming the plaintiffs have stated a federal cause of action against the School Committee under 28 U.S.C. § 1331, for which an award of damages might otherwise be awarded,
a) is there a sufficient identity of interest between the Town of Smithfield and the

School Committee so as to require compliance with the provisions of R.I.G.L. § 45–15–5? In other words, is the Committee the 'alter ego' of the Town?
b) Assuming the answer to (a) is yes, can failure to comply with a state-created limitation on liability bar recovery under a federally-created cause of action?"
The defendants have not responded to the letter, and the Court is left without the benefit of their advocacy on this issue.

13. In *Becker v. Beaudoin, supra* 261 A.2d at 901–902, the Rhode Island Supreme Court made a similar distinction between the sovereign immunity enjoyed by the state (preserved) and the immunity of its municipal subdivisions (abrogated). *Cf. Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In this respect the School Committee, as a "local public entity", is more accurately characterized as a municipal or independent subdivision, as opposed to "a mere arm of the State itself," *see Moor v. County of Alameda, supra* 411 U.S. 693, at 719–721, 93 S.Ct. 1785, 36 L.Ed.2d 596, as discussed, *infra,* so that neither the state's sovereign immunity nor the Eleventh Amendment applies here.

Nonetheless, Judge Clarie in *Perzanowski, supra,* ultimately reached the same conclusion as did the *Washington* court. He appears to have essentially adopted the rationale of *Payne v. Mertens,* 343 F.Supp. 1355 (N.D.Cal.1972), in which Judge Renfrew refused to find a federal cause of action under 28 U.S.C. § 1331 against the City of Palo Alto on the ground that an interpretation of *Bivens* to support such a claim "would be to vitiate the Congressional mandate of 42 U.S.C. § 1983." *Payne, supra* at 1358. See also *Brault v. Town of Milton,* 527 F.2d 735 (2d Cir. 1975) (Timbers, J., dissenting), *rev'd on other grounds,* 735 F.2d 736 (2d Cir. 1975) (en banc). *Cf. Jamison v. McCurrie,* 388 F.Supp. 990, 992 (N.D.Ill.1975).

In *Dahl v. City of Palo Alto, supra,* however, Judge Renfrew reversed his earlier position expressed in *Payne* to conclude that the City of Palo Alto was amenable to suit for a deprivation of constitutional rights under 28 U.S.C. § 1331. In contrast to his unsupported conclusion in *Payne* that such a holding would undermine Congress' intent in enacting 42 U.S.C. § 1983, *id.* at 1358, in *Dahl, supra* at 650–651, Judge Renfrew reached the contrary conclusion only after undertaking a careful analysis of the legislative histories of 28 U.S.C. § 1331 and 42 U.S.C. § 1983 and the relevant Supreme Court decisions interpreting 42 U.S.C. § 1983, *viz., City of Kenosha v. Bruno, supra; Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); and *Monroe v. Pape, supra.* The Fourth Circuit in *Cox v. Stanton,* 529 F.2d 47 (1975), and a panel of the Second Circuit in *Brault v. Town of Milton, supra,* which was reversed on other grounds, have reached similar conclusions. In his dissent to the en banc reversal of the *Brault* panel decision, Judge Oakes lists a number of other decisions in which the federal courts have, without extended discussion, found municipalities and school districts subject to suit under the Constitution and 28 U.S.C. § 1331. *Id.* See also *Calvin v. Conlisk,* 520 F.2d 1, 8–9 (7th Cir. 1975); *Singleton v. Vance*

*County Board of Education,* 501 F.2d 429, 432–433 (4th Cir. 1974) (Winter, J., concurring and dissenting); *Patterson v. City of Chester,* 389 F.Supp. 1093 (E.D. Pa.1975); *Dupree v. City of Chattanooga,* 362 F.Supp. 1136, 1139 (E.D.Tenn. 1973).

 The Court is persuaded by the reasoning of this latter group of cases that the mere fact that a government subdivision is not subject to suit under 42 U.S.C. § 1983 because it is not a "person" within the meaning of that statute does not shield it from liability under 28 U.S.C. § 1331. *See also City of Kenosha v. Bruno, supra* 412 U.S. at 516, 93 S.Ct. 2222 (Brennan, J., concurring). In contrast to my conclusion in Part II, *supra,* that the distinction between 42 U.S.C. § 1983/28 U.S.C. § 1343 and 28 U.S.C. § 1331 is one of form insofar as exhaustion of administrative remedies is concerned, the distinction between these sections is one of substance in respect to the class of potential defendants subject to suit under each. As noted above, but for the $10,000 jurisdictional minimum of § 1331, any civil rights action cognizable under 42 U.S.C. § 1983/28 U.S.C. § 1343 may also be brought under 28 U.S.C. § 1331. The converse is not true. Section 1331 confers jurisdiction over civil rights actions brought against a much larger class of defendants, as *Bivens* itself exemplifies. The class of defendants subject to suit under § 1983/§ 1343 is limited to "persons" acting under color of *state* law. Section 1331 likewise recognizes this class, but provides a jurisdictional base for civil rights actions against persons acting under color of *federal* law and, for reasons discussed above, against governmental subdivisions which act under color of state law but are not otherwise shielded by the Eleventh Amendment. Since no other federal barriers to the maintenance of this action exist, such as the Eleventh Amendment, *e. g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), or sovereign immunity as a matter of federal law, *e. g., James v. United States,* C.A.No. 4670 (D.R.I.

8/14/75) (unreported opin.), *on remand,* 502 F.2d 1159 (1st Cir. 1973), *vacating,* 358 F.Supp. 1381 (D.R.I.1973), *see* note 13, *supra,* we must next determine

whether there is any basis in *state* law for a finding of School Committee immunity.[14]

**14.** In view of my conclusion, *infra,* that the School Committee enjoys no state-conferred immunity from this suit, either in its capacity as a School Committee or as the "alter ego" of the Town of Smithfield, I need not resolve the larger and more basic question whether such a state-conferred immunity, either absolute or qualified (*e. g.,* R.I.G.L. § 45–15–5), could ever constitute a bar to a damage action under 28 U.S.C. § 1331 to recover for a deprivation of rights guaranteed by the United States Constitution, *see* note 12, *supra. See generally Moor v. County of Alameda, supra* 411 U.S. at 707–710, 93 S.Ct. 1785; *Monroe v. Pape, supra* 365 U.S. at 191, 81 S.Ct. at 486, each reserving "the constitutional question whether Congress has the power to make municipalities liable for acts of its officers that violate the civil rights of individuals." *See also Dupree v. City of Chattanooga, supra* at 1139.

In this regard it may be argued that in joining the Union, the States and their governmental subdivisions of necessity surrendered their sovereign immunity in areas governed by federal law. *Cf. Bivens, supra* 403 U.S. at 395, 91 S.Ct. 1999; *In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890). Under this analysis, the only obstacle to a suit against the state based upon federal law to which it had not expressly consented would not be its sovereign immunity, but rather the Eleventh Amendment. *See generally Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri,* 411 U.S. 279, 287 (Marshall, J., concurring in result) and 298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (Brennan, J., dissenting). Where, as here, the Eleventh Amendment has no application, acceptance of this analysis would require a federal court to reject a defense of state-conferred governmental immunity, whether interposed in its absolute form or for some lesser failure to comply with notice requirements, as a bar to the maintenance of a suit otherwise cognizable under 28 U.S.C. § 1331 for deprivation of federally created rights.

"[T]he limitations on state remedies for violation of common-law rights by private citizens argue in favor of a federal damages remedy. The injuries inflicted by officials acting under color of law, while no less compensable in damages than those inflicted by private parties, are substantially different in kind, as the Court's opinion today discusses in detail. See *Monroe v. Pape,* 365 U.S. 167, 195 [81 S.Ct. 473, 488, 5 L.Ed.2d 492] (1961) (Harlan, J., concurring). It seems to me entirely proper that these injuries be compen-

sable according to uniform rules of federal law, especially in light of the very large element of federal law which must in any event control the scope of official defenses to liability. See *Wheeldin v. Wheeler,* 373 U.S. 647, 652 [83 S.Ct. 1441, 1445–1446, 10 L.Ed.2d 605] (1963); *Monroe v. Pape, supra,* 365 U.S. at 194–195 [81 S.Ct. 473, at 487–488] (Harlan, J., concurring); *Howard v. Lyons,* 360 U.S. 593 [79 S.Ct. 1331, 3 L.Ed.2d 1454] (1959). Certainly, there is very little to be gained from the standpoint of federalism by preserving different rules of liability for federal officers dependent on the State where the injury occurs. Cf. *United States v. Standard Oil Co.,* 332 U.S. 301, 305–311 [67 S.Ct. 1604, 1606–1610, 91 L.Ed. 2067] (1947)." *Bivens, supra,* 403 U.S. at 409, 91 S.Ct. at 2011 (Harlan, J., concurring).

The contention that state-conferred immunity is no bar to a suit brought pursuant to 28 U.S.C. § 1331 receives some, perhaps unexpected, support from the Supreme Court's analysis of 42 U.S.C. §§ 1983 and 1988 in *Moor v. County of Alameda, supra,* although the precise question was reserved, *id.* 411 U.S. at 709, 93 S.Ct. 1785. Relying on its earlier analysis of § 1983 in *Monroe v. Pape, supra,* in *Moor* the Court, per Justice Marshall, concluded that Congress had purposefully excluded municipalities from liability under § 1983 because Congress had concluded, rightly or wrongly, "that [it] lacked the constitutional power to impose liability upon municipalities." *Moor, supra* at 709, 93 S.Ct. at 1796. The fact that a given state had lifted municipal immunity did not, in the Court's view, alter its conclusion that a suit could not be maintained against a municipality under 42 U.S.C. § 1983 since that determination involved strictly an interpretation of federal law.

"Petitioners argue that merely because 'Congress [did] not intend, as a matter of federal law, to impose vicarious liability upon a public entity for violations of the Civil Rights Acts committed by the entity's employees,' it does not follow 'that Congress also intended to preclude a state from imposing such vicarious liability as a matter of state law.' Reply Brief for Petitioners 4–5. Certainly this is true. But this fact does not assist petitioners, for the very issue here is ultimately what Congress intended federal law to be, and, as petitioners themselves recognize, Congress did not intend, *as a matter of federal law,* to impose vicarious liability on municipalities for violations of federal civil rights by their employees." *Id.* at 710 n. 27, 93 S.Ct. at 1796 (emphasis in original).

## B

In *Becker v. Beaudoin, supra,* the Rhode Island Supreme Court abrogated the doctrine of governmental immunity in tort as to municipal and quasi-municipal corporations, "subject, however, to any legislation which has been or may be enacted by the general assembly limiting or regulating the prosecution of such claims." *Id.* 261 A.2d at 901. Since the general assembly has seen fit to regulate the prosecution of such claims only as against towns and cities of the State, R.I.G.L. § 45–15–5, we must conclude that as to the School Committee, *qua* Committee, the concept of governmental tort immunity has been totally abandoned. Therefore, if the School Committee retains any state-conferred immunity at all, it must derive from that still possessed by the Town of Smithfield (hereinafter "the Town"), that is, the notice requirement of R.I. G.L. § 45–15–5. Such a conclusion would be warranted only if the Court were to find that the Committee is the "alter ego" of the Town, in that a finding of liability against the Committee in effect constitutes a finding against the Town. *See generally Edelman v. Jordan, supra; Moor v. County of Alameda, supra.*

This Court undertook a similar inquiry in its recent decision of *Bowen v.*

Conversely, if, as here, it were determined as a matter of federal law that municipalities were liable for violations of federal constitutional deprivations by their employees under 28 U.S.C. § 1331, then, under the *Moor* analysis, the fact that a given state had *not* lifted municipal immunity would be equally irrelevant to the maintenance of the federal action. *See also* Dellinger, "Of Rights and Remedies," *supra* 85 Harv.L.Rev. at 1553–1559. This analysis appears to have been accepted by the D.C. Circuit in *Sullivan v. Murphy, supra* at 972: "Plaintiffs allege infringement of rights constitutional in origin (Fourth and Fifth Amendments). The means of redress are Federal, and vindication is being sought in a Federal forum. Under these circumstances, the *Erie* [*R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] doctrine is wholly inapplicable; and all elements of the action are governed by Federal law. In an action to enforce Federal rights it is Federal

*Hackett,* 387 F.Supp. 1212 (D.R.I.1975) and there discussed at length the criteria to be considered in determining whether certain state funds ought to be characterized as the "alter ego" of the State and therefore beyond the reach of the federal courts by virtue of the Eleventh Amendment. The approach taken by the Court in *Bowen* appears equally appropriate for the case at bar and I adopt its reasoning. Applying the analysis of *Bowen,* the Court concludes that the School Committee is not the "alter ego" of the Town of Smithfield and that, as a result, R.I.G.L. § 45–15–5 presents no obstacle to the maintenance of plaintiff's claim against the School Committee.

Rhode Island by statutory and decisional law has consistently distinguished between the powers and duties of school committees and the municipalities in which they function. Although the operation of a school system is financed in part by municipal taxes, substantial state and federal funds are also involved. *See* R.I.G.L. § 16–7–15 *et seq.* Furthermore, the moneys collected by the municipality for school purposes must be kept separate and apart from general municipal revenues from the moment they are collected until the time they are disbursed. Thus, R.I.G.L. § 16–7–27 provides:

"16–7–27. School tax rate to be identified.—The taxing authority in every

law—not state common law—that controls such critical matters as the scope of relief, just as it controls the maintainability of the action against a defense of immunity or expiration with plaintiff's death. Where there is an infringement of constitutional rights the Federal courts must be guided by the need for an effective remedy, and are not constrained by the 'state law' of the jurisdiction where the acts took place. *Bivens v. Six Unknown Named Agents, supra.*" (Footnotes omitted.)
*But see Johnson v. Alldredge,* 488 F.2d 820, 826–827 (3d Cir. 1973). *Cf. Brault v. Town of Milton, supra* (panel and en banc decisions).
Acceptance of this position would not, however, affect the viability of federally recognized affirmative defenses, such as official immunity. *See, e. g., Wood v. Strickland, supra; Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

city and town of the state shall record upon the individual tax notices the tax rate which is apportioned for school purposes separate from the tax rate which is apportioned for municipal purposes and the total thereof of these two (2) tax rates."

The town treasurer holds both general municipal and school funds, but cannot commingle them.

"[R.I.G.L.] 16–9–1. Receipt and payment of school funds by town treasurer.—The town treasurer shall receive the money due the ·town from the state for public schools, and shall keep a separate account of all money appropriated by the state or town or otherwise for public schools in the town, and shall pay the same to the order of the school committee."

The treasurer must also keep separate "expenditure records for all school purposes." R.I.G.L. § 16–7–28.

Furthermore, the Rhode Island Supreme Court has firmly established that:

"[O]nce an appropriation is made by a city council or town meeting for use of the school committee, the expenditure of those funds so appropriated is within the committee's sole and exclusive jurisdiction." *Dawson v. Clark,* 93 R.I. 457, 460, 176 A.2d 732, 734 (1962). *See also Bailey v. Duffy,* 45 R.I. 304, 121 A. 129 (1923).

For example, the municipality has no voice in a school committee's choice for the location of its schoolhouses, *Murphy v. Duffy,* 46 R.I. 210, 124 A. 103 (1924); or its decision on school employees' salaries, *Bailey v. Duffy, supra; Hardy v. Lee,* 36 R.I. 302, 90 A. 383 (1914); to make contracts to repair school buildings, *Times Publishing Co. v. White,* 23 R.I. 334, 50 A. 383 (1901); or to purchase group life insurance, *Dawson v. Clark, supra.*

The above-cited cases establish that the municipality's sole role in school committee matters is ministerial; no discretion attaches to it. In *Dawson v. Clark, supra,* the Rhode Island Supreme Court laid to rest the notion that a

school committee is purely the creation of the municipality in which it functions. The court rather held that, since a "school [committee] in carrying out the functions assigned to [it] by the legislature [is] exercising a portion of the state's sovereignty [citations omitted]", a school committee is not required to conform its actions to its municipality's charter. *Id.* at 460, 176 A.2d at 734. In *Dawson,* the court construed the role of the municipality in soliciting and processing bids for group life insurance coverage on behalf of its school committee as restricted to acting as a conduit which had no influence on the ultimate contract award. The court explained, *supra* at 462, 176 A.2d at 735:

"It seems clear that the committee was not attempting to surrender its prerogative, but was merely utilizing the facilities of the purchasing agent, the board and whatever other finance officers are normally concerned with the keeping of the city books and disbursement of funds.

Indeed no other construction is tenable. The school committee could not delegate the jurisdiction conferred upon it by the legislature in the absence of legislative authority to do so." (Citation omitted).

Thus, as in *Bowen v. Hackett, supra,* the Court must conclude that the school "funds in question are independent and not available for general [municipal] revenue purposes," *id.* at 1219, and that the Town, through its treasurer, is acting solely as "custodian of these funds," *id.* at 1221, a substantial portion of which come from state and federal sources.

The state statutory scheme is designed to ensure "a minimum per pupil expenditure level," throughout the state, but also encourages "school committees to provide superior education beyond this minimum," R.I.G.L. § 16–7–15. Thus, each community is required to make such appropriations to its school committee which, together with state and federal aid, will be sufficient to fund a minimum program. R.I.G.L. § 16–7–24. If a

given community cannot meet this requirement out of its revenues available for school purposes, its school committee is authorized by R.I.G.L. § 16–1–10 to request that the state, through the department of education, assume control and management of the public schools. Even if the department does assume management, it is authorized to draw only upon those municipal funds "required by law to be accredited to the public school account." R.I.G.L. § 16–1–11. Under this statutory scheme, I must conclude that the general municipal revenues of the Town of Smithfield are immunized from satisfying obligations incurred by its School Committee. *See Bowen, supra* at 1221. In consequence, I conclude that the School Committee is not the "alter ego" of the Town of Smithfield and that R.I.G.L. § 45–15–5 has no application to the instant proceedings.[15]

The defendants' motion to dismiss must in all respects be denied.

---

**15.** The plaintiff also relies on *Lonsdale Co. v. City of Woonsocket*, 25 R.I. 428, 56 A. 448 (1903), to support his contention that plaintiff's damage claim is not covered by R.I.G.L. § 45–15–5 because it is merely "incidental" to his claim for equitable relief. Since the United States Supreme Court recently rejected a similar argument in *Edelman v. Jordan, supra; see also Bowen v. Hackett, supra* at 1216–1217, this Court has not relied upon *Lonsdale* in reaching its decision today.