TIMES PUBLISHING Co. *vs.* J. ELLIS WHITE, City Treasurer.

PROVIDENCE—NOVEMBER 15, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Mandamus. Municipal Corporations. School Committee.*

Gen. Laws cap. 54, § 9, makes it the duty of the town treasurer to receive all moneys appropriated by the State or town for public schools and provides that "he shall pay the same to the order of the school committee." The charter of the city of Pawtucket, passed in 1885 (Pub. Laws cap. 474, § 7, clause 2), provides that "the expenditures of the moneys appropriated for public schools shall be by and under the direction of the school committee of said city." The city council of Pawtucket by joint resolution appropriated specific sums for the purpose of making repairs to various school-houses, specifying the amounts applicable to each school-house. The city treasurer refused to pay the claim of the petitioner against the city, which had been duly passed upon and ordered paid by the school committee, on the ground that it did not appear to what appropriation it should be charged:—

*Held,* that it was competent for the school committee, in the doing of the work for which said appropriations were made, to make such contracts therefor, either as a whole or in parts, as in their judgment should seem proper, and that the petitioner was entitled to a writ of *mandamus* to compel the city treasurer to pay the bill of the petitioner.

MANDAMUS. The facts are stated in the opinion. Heard on demurrer and answer to writ. Demurrer overruled, and writ granted.

TILLINGHAST, J. We think the petition states a case for *mandamus,* and that the demurrer must therefore be overruled. It appears from the petition that the petitioner has a just claim against the city, which was properly contracted by the school committee thereof; that said claim has been duly passed upon and ordered paid by said school committee; that there are funds in the hands of the defendant subject to the order of said school committee, which are properly applicable to and are sufficient for the payment of said claim, and that he has no defence whatever which could be set up in any court against the payment thereof. In short, the case shows the mere refusal on the part of the defendant to

discharge a plain ministerial duty; and it is clear that in such a case *mandamus* will lie. *Portland Stone Ware Co. v. Taylor*, 17 R. I. 35.

The demurrer is therefore overruled.

We now come to the consideration of the answer or return set up by the defendant, which is in effect as follows: That on the 8th day of June, 1901, the city council of Pawtucket passed a joint resolution by which it appropriated the following sums, "or so much thereof as is necessary, for the purpose of making repairs to the following schools: High Street School, $194; South Woodlawn, $26; Pidge Avenue, $196; Prospect Street, $78; Lincoln Avenue, $302; Brook Street, $209; Garden Street, $1,325; Capital Street, $130; Quincy Avenue, $157; Cherry Street Kindergarten, $171; Church Street, $772; Grove Street, $405; total, $3,965." That the city treasurer was authorized to borrow on the notes of the city such sums as the exigencies of the city treasury might from time to time require. That upon the presentation by the petitioner of said account against the city, the defendant returned the bills to the school committee, with the following communication:

"OFFICE OF CITY TREASURER,
"PAWTUCKET, R. I., Aug. 14, 1901.
"*T. P. Corcoran, Esq., Clerk School Committee,*
"*Pawtucket, R. I.:*
"DEAR SIR:

"I return enclosed bills handed me this morning, and request that you comply with the instructions in my letter to you of the 23d ult., *i. e.*, 'the expenditures on each school building must be separated, and in conformity to the amount specified in a Joint Resolution of the City Council passed May, A. D. 1901.'

"Further, I will refer you to the opinion of the City Solicitor, and also to a vote passed by the Joint Standing Committee on Finance both attached to my communication to you of the 23d ult. I am,

"Very respectfully yours,
"J. ELLIS WHITE,
"*City Treasurer.*"

As the defendant does not inform us of the nature of the joint resolution referred to in said communication, of the vote of the joint standing committee on finance, or of the opinion of the city solicitor, we have no means of knowing what they were, and hence cannot consider them.

(1)    As the powers and duties of the school committee in the premises, as well as those of the city council and city treasurer, are fixed by statute, however, we do not think said resolution, vote, etc., are material to the determination of the questions before us.

The defendant further says that he has never refused to pay said bills, but has always been ready and willing to pay the same whenever the proper authentication is made by said school committee as to what appropriation they shall be charged. That he has no money in his hands for the use of public schools, save the annual appropriation for said schools, save as appears by said resolution appropriating certain specified sums for the repair of certain school buildings, and that in accordance with said resolution he can pay money from the city treasury for no other purpose. And, finally, the defendant says that he has no funds in his hands and that no appropriation has been made by the city council of Pawtucket applicable to the claim which is set out in the petition.

The return or answer taken as a whole, although inconsistent, simply comes to this: That so long as no special appropriation has been made by the city council for the payment of these particular bills, and so long as the school committee has not seen fit to direct them to be paid out of some one of said appropriations, or to apportion said bills *pro rata* amongst the various schools for which appropriations were made, as aforesaid, he is not authorized to pay the same.

This position of the defendant, to say nothing of its being practically impossible of performance by the school committee, in so far as a *pro rata* apportionment is concerned, is untenable in law. Under the city charter of Pawtucket and the general laws of the State, the school committee have full control and management of the public schools and school property in said city and are not subject to the supervisory

control of the city council or city treasurer in this regard, except that they are dependent upon the former for the city appropriation for carrying on said department. In other words, the school committee constitutes a distinct department of the city government and has certain well-defined statutory powers and duties; and while acting within the limit of these powers it is not subject to the control of any other branch of the local government.

To be more specific: the city council of Pawtucket has no more control over the management of the public schools or school property of the city, except in the matter of making appropriations as aforesaid, than the school committee has over the control and management of those departments of the city which, by statute, are made subject to the control of the city council. Each body is independent within its own sphere of action, and is responsible only to the people whom it is elected to serve.

The charter of the city of Pawtucket, passed in 1885 (see Pub. Laws R. I. cap. 474, § 7, clause 2), provides "that the expenditure of the moneys appropriated for public schools shall be by and under the direction of the school committee of said city in the same manner that the school committee of the town of Pawtucket has heretofore had direction of like expenditures in said town." Clause 3 provides that "The city council shall have the care and management of all the property of the city, excepting that the care and management of the school property of the city shall be in the school committee." Section 20 of said charter provides, amongst other things, that "Said school committee shall make their annual report to the city council at such time as may be required by ordinance; and they shall annually elect a superintendent of public schools, who shall not be a member of the school committee, and fix his compensation, which shall be paid out of the money appropriated for public schools, and shall be otherwise charged with all the duties and have all the privileges which the school committee of the town had and were charged with at the passage of this act." Gen. Laws R. I. cap. 54, § 9, makes it the duty of the town treas-

urer to receive all moneys appropriated by the State or town or otherwise for public schools, and provides that "he shall pay the same to the order of the school committee."

Such being the law of the State relating to the powers and duties of the school committee, and also to the powers and duties of town treasurers pertaining to money in their hands appropriated for public school purposes, we think it is clear that it was the duty of the defendant to pay the bills of the petitioner, as requested. It is evident that the school committee, in advertising for bids for the repair of said school buildings, were taking the proper initiatory steps in connection with the making of the necessary repairs thereon, and that the bills for such advertising were legally contracted. And as the aforesaid amount had been appropriated for the making of said repairs, there was money in the hands of the defendant subject to the order of the school committee for the payment of any and all bills properly incurred in the doing of said work. That the bills in question were proper ones nobody disputes. That they ought not to be charged to either one of the particular items which go to make up the sum total appropriated, as aforesaid, but should be charged to the appropriation as a whole, as was done by the school committee in this case, is evident.

One of the advertisements which the school committee caused to be inserted in the petitioner's newspaper, and for which insertion one of the bills in question was allowed by the school committee, called for bids for "the masons', carpenters', painting, tinting, and steam-heating work required in the alterations to be made at the Garden Street School Building and at the various other school buildings mentioned in the specifications;" and stated where the plans and specifications might be seen. The other advertisement calls for "three carpenters to make repairs on school buildings." That the method thus evidently proposed to be adopted by the school committee in making the repairs to the various school-houses in question was a business-like and economical one will hardly be questioned; and that the school committee was called upon to advertise for separate bids upon each of said school-

houses, and to keep separate and distinct accounts in the premises with each one, as claimed by the defendant, instead of keeping a single account as evidently proposed by them, we do not agree. The specific amounts mentioned in the vote making the appropriation were evidently based upon estimates made by the school committee in order to enable the city council to act intelligently in the premises; but the appropriation in effect was only of a gross sum for repairs, and when made it was solely subject to the control of the school committee.

That the utmost good faith should be, and doubtless will be, exercised on the part of the school committee in the expenditure of said appropriation, goes without saying. But we think that under the statute giving them the control and management of all the school property, as aforesaid, they have the right to exercise their judgment as to the needs of each particular building, as those needs shall appear at the time of making the repairs.

We therefore decide that it is competent for said school committee, in the doing of the work for which said appropriation was made, to make such contracts therefor, either as a whole or in parts, as in their judgment shall seem proper.

The writ is granted.

*Edward D. Bassett*, for petitioner.

*Edward W. Blodgett, City Solicitor of Pawtucket*, for respondent.