LOUIS M. ROYAL *vs.* PETER J. BARRY *et al.*

MAY 13, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

26

POWERS, J. This is a petition for a writ of certiorari to review the action of the school committee of the city of Pawtucket in suspending the petitioner as a teacher within the school system. The writ was issued and in compliance therewith the pertinent records have been certified to this court. Simultaneously with the issuance of the writ we ordered a stay of the suspension pending the hearing of the case on its merits.

It appears from the record that petitioner has been a mathematics teacher in the public schools of the city of Pawtucket for approximately thirty years and that, by letter dated October 16, 1959, he was requested by respondent Peter J. Barry, chairman of the school committee, "to appear at a special executive meeting of the School Committee to be held on Friday, October 23, 1959 at 8:00 p.m. in the School Administration Building * * * to discuss the much publicized charges against you in connection with

the addressing of envelopes by students in your home-room at Tolman Senior High School." Hereinafter respondent Barry will be referred to as the chairman.

On receipt of this communication petitioner consulted counsel who, by letter dated October 20, 1959, advised the committee through its chairman that general laws 1956, §16-13-4, entitled a teacher to a private hearing, if desired, and that unless the committee would assure petitioner that the proposed hearing on October 23 would not thereafter be made public, by advice of counsel he would not participate therein. Thereupon by letter dated October 22, 1959 the chairman advised petitioner that whereas the letter of October 16 had *requested* the latter's attendance at the executive meeting scheduled for October 23, he was now *directed* to appear.

The notes taken by the clerk at the meeting of October 23, which constitute the transcript, disclose that petitioner accompanied by his attorney attended the meeting. The following persons also were present: Three members of the Teachers' Alliance; Cornelius F. McGeough, assistant principal of the school to which petitioner was assigned; four persons who were parents and children allegedly having some knowledge of the incident giving rise to the hearing; counsel for the school committee; and representatives of the press. There were six members of the school committee in attendance. The chairman requested the newspaper men to leave, and in reply to a question from one of them stated that the letter to petitioner had given notice that the committee would meet in executive session. Thereupon the reporters withdrew.

Counsel for petitioner inquired if there were charges against Mr. Royal, to which the chairman replied, "in a sense, yes," whereupon he demanded a private hearing as required by law, citing G. L. 1956, §16-13-4. That section reads as follows: "Statement of cause for dismissal shall be given the teacher in writing by the governing body of the

schools at least one (1) month prior to the close of the school year. The teacher may, within fifteen (15) days of such notification, request in writing, a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court. Nothing in this section shall prevent the retirement of any teacher under a rule of the school committee affecting marriage."

The petitioner's counsel then requested an assurance from the chairman that the proceedings would not thereafter be made public and further requested that the witnesses be excluded until called. It appears that the witnesses thus referred to were the parents and children who were present at the request of the school committee to aid in the inquiry of the circumstances relating to students in petitioner's home room addressing envelopes to their parents during school hours and at his direction. The envelopes thus addressed, which contained a political circular advancing the nomination in a forthcoming primary of certain persons as candidates for the school committee, apparently were then mailed to the addressees.

The chairman declared that he could give no such assurance, that there were no formal charges pending, and that the executive meeting then in session had been called for the purpose of inquiring about the incident in question. He added that no action had thus far been taken by the committee and that if action were taken after information had been gathered the petitioner might thereafter request a hearing as provided in G. L. 1956, §16-13-4.

Counsel for petitioner then stated that since there was no specification of charges nor any official charges made, and no assurance that the proceedings would be private as requested, on his advice petitioner would decline to answer questions put to him or otherwise participate in the meeting.

The committee recessed at 8:30 p.m. and reconvened at 8:45 p.m. At this point in the proceedings petitioner's counsel questioned whether the school committee was properly constituted, one of its members having moved from the city and no action having been taken to fill the vacancy as authorized by law. The committee again recessed at 8:50 p.m. presumably to deliberate this question in private. It reconvened at 8:55 p.m. and there ensued some discussion between the parties as to the legal status of the committee. Although petitioner has briefed and argued the alleged illegality of the committee's composition we do not consider it pertinent to the instant proceeding.

There then followed discussions between the chairman and petitioner's counsel relative to the nature of the meeting, the provisions of the law relating to teachers, and the applicability of the school committee rules providing for private hearings when "personalities" are to be discussed. The chairman pointed out that the proceedings were an executive meeting and not a hearing. Although counsel for petitioner conceded that the school committee might properly inquire of a teacher regarding procedure during classes, he reiterated that for the reasons stated petitioner would decline to answer any questions.

Thereafter the chairman read into the record four signed statements, two by students and two by parents, the former stating that under the direction of petitioner they had addressed envelopes to their parents during school hours and the latter registering their objections "to the recent action of Mr. Louis M. Royal, in having my ———————— address an envelope, the use of which had nothing to do with regu-

lar school assignments." The transcript refers to these statements as affidavits, but although signed they were not given under oath.

It appears from the record that the chairman again asked if petitioner would answer questions regarding the incident to which the statements referred, and his counsel replied that for all of the reasons heretofore given petitioner would decline to answer. The chairman then stated that in the opinion of the committee the reasons advanced for petitioner's refusal to answer were without merit. The committee thereupon again recessed at 9:10 p.m. for private discussion. The meeting was reconvened at 9:44 p.m., and the chairman announced that a majority of the committee had voted to suspend petitioner without pay from October 26 to November 23, 1959.

It is contended, *inter alia*, that the vote of the school committee to suspend petitioner is illegal for the reason that it is in violation of sec. 4-1806 of the Pawtucket city charter which provides, "The meetings of the school committee, except when in executive session, shall at all times be open and accessible to the public. No final action shall be taken on any matters by the school committee meeting in executive session, but all matters shall be voted upon by the school committee at an open meeting thereof, except on such matters the disclosure of which would be detrimental to any pupils involved."

The petitioner argues that since the record discloses that the vote by a majority of the members of the school committee was not taken at an open meeting, it was in violation of law as set forth in the city charter. We conceive this argument to be without merit for the reason that no provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly. In other words a school committee's exercise of its powers cannot be regu-

lated by local legislation whether by ordinance or charter. The intendment of article XXVIII of amendments to the state constitution, "Home Rule For Cities And Towns," as expressed in §1 thereof, is to grant and confirm the right of self-government by home rule charter in all *local* matters. Article XII of the constitution expressly and affirmatively reserves to the legislature sole responsibility in the field of education and nothing contained in article XXVIII is in derogation thereof. See *City of Pawtucket* v. *Pawtucket Teachers' Alliance, Local 930,* 87 R. I. 364, 141 A.2d 624. Likewise petitioner's contention that public laws 1953, chap. 3238, has the effect of validating the provisions of the Pawtucket home rule charter is without merit, since no provision thereof expressly or by implication relates to the provisions of the charter on which he relies. This legislation was enacted primarily to ratify provisions of the Pawtucket home rule charter purporting to substitute an off-year, nonpartisan municipal general election for the partisan general election then obtaining under the statutes. The proposed changes relating to elections, being contrary to the state law, were invalid without ratification by the general assembly. *Opinion to the House of Representatives,* 80 R. I. 288.

The only provisions of the charter relating to education and re-enacted by chap. 3238 are contained in secs. 8, 9 and 26 thereof. They provide six-year terms for school committee members, the method of filling vacancies, and fix the manner in which the terms are staggered. Being contrary to the provisions of G. L. 1956, §16-2-5, they were without validity as charter provisions unless ratified by the general assembly, and it seems obvious that it was for that reason that the legislature included them in the act validating the general and primary election provisions of the Pawtucket home rule charter.

The petitioner further contends that the action of the school committee in suspending him was an invalid exer-

cise of its authority. He argues in support thereof that the Teachers' Tenure Act, so called, G. L. 1956, §§16-13-3 through 16-13-5, prohibits the dismissal or suspension of a teacher except for cause on charges preferred in writing which shall be considered at a private hearing, if so requested by the teacher within fifteen days of receiving notice of the charges preferred, and that these provisions of the law were not complied with in the instant case.

General laws 1956, §16-13-5, provides: "Section 16-13-4 shall not prevent the suspension of a teacher for good and just cause. But if, after hearing is requested by the teacher, the teacher shall be vindicated, he shall be paid in full for the period of suspension."

We cannot agree with petitioner's contention that the provisions of the Teachers' Tenure Act when read together entitled a teacher to a hearing on specified charges as a condition precedent to suspension by the school committee having jurisdiction in the premises. It is clear from the provisions of §16-13-5 and the separation thereof from the provisions of §16-13-4 that the legislature intended to vest in the school committees of the cities and towns wider latitude when acting to suspend than that conferred upon them when the question is one of final dismissal.

Good cause must be shown in each case if a hearing is requested, but in the matter of suspension the cause which in the opinion of the school committee justified its action may be contained in the notice to the teacher informing him of his suspension. The decision as to whether a hearing shall be had on the cause stated is for the teacher to make on receipt of such notice. If, following suspension, no hearing is requested, none is required; but if on request a hearing is had, an appeal by the teacher from an adverse decision by the committee is to the commissioner of education as provided in G. L. 1956, §16-39-2, and in such circumstances is not by certiorari to this court.

It is also contended that, assuming arguendo petitioner had directed students in his home room to address envelopes to their parents for the purpose heretofore indicated, nevertheless his conduct was not an infraction of any state law or rule of the school committee. Moreover, counsel argues, the record is barren of legal evidence that petitioner did in fact cause any student to address envelopes for any purpose. These contentions relate to the merits of the committee's action in suspending petitioner and are thus not properly before us.

If the members of the committee voting to suspend petitioner based their action on what they believed petitioner's conduct to have been with respect to the incident of the addressed envelopes and considered such conduct as cause for suspension, they were obligated to so advise petitioner and thus afford him the opportunity to request a hearing thereon as provided in §16-13-5. It is so obvious as not to require discussion that, unless a teacher whom the committee has voted to suspend is made cognizant of the reason, he cannot intelligently determine whether to request the hearing to which he is entitled if in his exclusive judgment a hearing is desirable.

We agree with petitioner's final contention that since the school committee failed to give any reason for its action in voting the suspension from October 26 to November 23, 1959 it exceeded its jurisdiction, and its proceedings should therefore be quashed. A careful examination of the transcript discloses no specified basis for the vote of the committee. The transcript is susceptible of varying interpretations; hence any conclusion drawn therefrom must be pure speculation.

The petition for certiorari is granted, the decision of the school committee is quashed without prejudice, and the records in the case which have been certified to this court are

ordered returned to the school committee with our decision endorsed thereon.

*Corcoran, Foley & Flynn, Francis R. Foley,* for petitioner.

*John A. O'Neill,* City Solicitor, *Harvey J. Ryan,* Assistant City Solicitor, for respondents.