411 A.2d 912.

COVENTRY SCHOOL COMMITTEE *vs.* ALBIN RICHTARIK *et al.*

FEBRUARY 29, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   This litigation involves a dispute between various officials of the town of Coventry. Their disagreement concerns the school committee's right to retain the services of an attorney who is not part of the town solicitor's staff. The disputants first reached the courthouse when on March 3, 1977, the committee filed a civil action in the Superior Court asking that the town treasurer, the town manager, and the town council be enjoined from interfering with the committee's selection of a counsel of its own choice. The committee's complaint also sought a writ of mandamus that would have

directed the treasurer to honor certain vouchers or payment orders presented to the treasurer by the committee. The treasurer, manager, and council responded with an answer to the complaint as well as both a counterclaim seeking declaratory and injunctive relief and a third-party complaint naming the committee's attorney, Arthur G. Capaldi (Capaldi), as a defendant and seeking a monetary judgment against him in the event the position they espoused was ultimately sustained.

The controversy was submitted to a Superior Court justice by way of an agreed statement of facts to which were attached a number of exhibits that were jointly offered by the litigants. Among the exhibits is a copy of the town's charter. On April 4, 1977, the trial justice, in a bench decision, ruled that the charter permitted the committee to hire an attorney for the sole purpose of advising the committee. The trial justice also declared that in all matters involving litigation, the committee must be represented by the solicitor. As the trial justice expanded on his original observations, he went on to point out that the committee could hire an attorney who might act either as a negotiator when the committee was engaged in collective bargaining with any union that represented the school employees or as an arbitrator who has been designated by the committee to participate in the precontract and postcontract phases of arbitration.

The treasurer, manager, and council have taken appeals from the judgment in favor of the committee and the dismissal of their counterclaim and third-party complaint, while the committee is before us on a cross-appeal, in which it challenges the correctness of the trial justice's limited view of what the committee's counsel could or could not do.

The stipulated facts indicate that during the years 1973, 1974, and 1975 the relationships between the solicitor's office and the school committee were harmonious. The different solicitors in office during this period or their designees served the committee's legal needs.[1] However, after the November

---

[1]The services rendered during 1973 and 1974 were paid from the committee's budget. In March 1975, the then solicitor retained Capaldi as the committee's attorney. Capaldi was paid $1,250 a month, and the payment was made from the solicitor's budget.

1976 municipal election, a change in solicitors occurred, and on November 11, 1976, the committee voted to retain Capaldi, who was an assistant to the outgoing solicitor, as its chief negotiator on all union contracts and made it clear that he was to continue to act as the committee's attorney. The committee noted that the "present monthly retainer shall be the same." The monthly retainer amounted to $1,250.

Thereafter, the council voted to remove Capaldi and did in fact appoint Bennett R. Gallo (Gallo) to the office of assistant to the solicitor and specifically ordered Gallo to act as the committee's attorney. The committee made it clear that it was completely satisfied with the legal services it was receiving.

The town's annual financial meeting was held in February 1977, and the electors approved a budget which included a $15,000 appropriation for the committee's legal expenses. The budget, as approved, also provided for a $15,900 salary for the assistant solicitor whom the council had designated as the committee's attorney. When Capaldi made the fact known to the committee that his retainers were no longer forthcoming, the committee took action.

On or about the second of March 1977, the committee submitted its payroll to the treasurer. One of the payroll items was a $4,500 proposed payment to Capaldi. The treasurer refused to honor the committee's request, and within a matter of days most of Coventry's officialdom was headed for Kent County Superior Court. On March 3, a restraining order was entered against the treasurer from interfering with the "lawful payment" of the school department payroll. The payroll was processed, and six days later Capaldi received $3,750[2] of his overdue retainers.

---

[2] The record fails to explain why the school committee was seeking a payment of $4,500. It appears that at the time Capaldi spoke to the committee about the retainer stoppage, he was speaking of services rendered in December 1976, January 1977, and February 1977. The $3,750 payment he received would amount to retainers for three months, leaving unexplained the $750 balance.

The solution to this controversy can be found after a consideration of the various portions of Coventry's town charter and a review of past pronouncements of this court as they relate to the powers and duties of a municipal school committee. The Coventry charter was adopted by the citizens in a referendum held on November 7, 1972. The charter was to become effective on January 1, 1973. The parties have stipulated that the General Assembly by its passage of P.L. 1973, ch. 4, "expressly ratified, confirmed and validated and enacted in all respects the entire Home Rule Charter."

Section 4.07 delineates the committee's powers and duties. This section makes it clear that the school committee is to have "all the powers and perform all the duties prescribed by the laws of the state." While the committee must submit budget estimates to the manager, the allocations of amounts appropriated rests within the sole discretion of the school committee; and the council's power over the committee's budget is restricted to modifying the total amount of the budget. The committee is charged, however, with the responsibility of cooperating with the treasurer so that this office can carry out its responsibilities.

Article VII of the charter concerns the solicitorship, and, insofar as it is relevant to this intragovernmental tug of war, it refers to his duties and his opinions in the following fashion:

(1) "The town solicitor shall serve as chief legal advisor to the council and to the town manager;

(2) "[t]he town solicitor shall appear for and protect the rights of the town in all actions, suits, or proceedings, civil or criminal, in law or equity, brought by or against it, or for or against any of its departments, offices or agencies, including the council, the manager and the school committee;

(3) "[t]he town solicitor shall also perform such other duties, appropriate to his office, as the council and the manager may require;

(4)   "[t]he town solicitor shall examine and approve the form of all ordinances and resolutions, of all invitations to bid, contracts, and other legal documents issued by any department, office or agency of the town;

(5)   "[a]ll written opinions of the town solicitor furnished to the council, the manager, and all departments, offices and agencies of the town shall be filed with the town clerk and shall become a public record."

Recently as well as in the past, this court has reminded those so interested that, because of art. XII of the Rhode Island Constitution, public education is the responsibility of the state, specifically, the General Assembly; and the various municipal school committees, when discharging their responsibilities, act as agents of the state. *Cummings* v. *Godin,* 119 R.I. 325, 377 A.2d 1071 (1977); *Royal* v. *Barry,* 91 R.I. 24, 160 A.2d 572 (1960); *City of Pawtucket* v. *Pawtucket Teachers' Alliance,* 87 R.I. 364, 141 A.2d 624 (1958). Under our law,[3] once an appropriation is made for the use of the school committee, the expenditure of those funds is within the committee's sole and exclusive jurisdiction. *Dawson* v. *Clark,* 93 R.I. 457, 176 A.2d 732 (1962); *Bailey* v. *Duffy,* 45 R.I. 304, 121 A. 129 (1923); *Times Publishing Co.* v. *White,* 23 R.I. 334, 50 A. 383 (1901).

The trial justice, in finding that the committee could hire a lawyer who could act as an advisor but not as an advocate first relied on those cases which hold that a committee acts as the agent of the state and then, with that proposition for support, decided that the committee had implicit power to seek legal advice. In fact, the trial justice, after noting the General Assembly's vesting of exclusive control of public education in the various school committees, observed: "[I]t is my judgment that *the town charter aside,* they [the committee] have all powers reasonably necessary to carry out

[3]This holding is based on legislation in which "the entire care, control, and management of all the public school interests of the several towns, shall be vested in the school committee of the several towns, and they shall also draw all orders for the payment of their expenses." General Laws 1956 (1969 Reenactment) §16-2-18.

the powers expressly granted, including the power to engage attorneys for legal advice." (Emphasis added.) We think the trial justice erred not only when he put the charter to one side but also when he construed the charter's terms in regard to what functions are encompassed within the solicitor's domain.

Coventry's Home Rule Charter was adopted pursuant to sec. 7 of art. XXVIII of the amendments to the Rhode Island Constitution. Earlier, in *Royal v. Barry*, 91 R.I. 24, 160 A.2d 572 (1960), the court ruled: "[N]o provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly." *Id.* at 30, 160 A.2d at 575. In *Royal*, the court held that a provision of the Pawtucket Home Rule Charter calling for open meetings of the school committee was invalid because there was nothing in the subsequent validating legislation that either expressly or impliedly ratified the open-meeting proviso.

Here, Coventry's charter stands in a different light because, as noted before in this opinion, the parties concede that the General Assembly has expressly validated the charter in all respects. Thus, the committee's right to have counsel of its own choice, if only to advise, must be found somewhere within the terms of the charter's art. VII.

When a court is called upon to construe the provisions of a municipal charter, the usual rules of statutory construction are employed. *Borromeo v. Personnel Board*, 117 R.I. 382, 367 A.2d 711 (1977); *Angel v. Murray*, 113 R.I. 482, 322 A.2d 630 (1974). With this principle as a guide, we need only refer to *Carter v. City of Pawtucket*, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975), where we pointed out that

> "the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question. Further, the words used therein should be given their usual and ordinary meaning."

The trial justice, in viewing art. VII, was of the opinion that

> "[t]he people who drew this charter obviously cut this thing right in half. The first half deals with advice, the town solicitor is required to advise the town manager, and the town council, nobody else, and it [the solicitor] clearly has no power in my judgment to advise any other body in the town. When it comes to actions and litigation, the second paragraph governs that, and of course he [the solicitor] has the power and the duty to represent these bodies."

The trial justice, in taking this approach, obviously overlooked that part of art. VII whereby all written opinions of the solicitor "to the council, the manager, and all departments, offices, and agencies of the town are to be filed with the town clerk * * *" as public records. The limited advisory role given the solicitor by the trial justice is completely at odds with and effectively nullifies the mandate concerning the solicitor's written opinions, which are to be given to all "departments, offices, and agencies of the town," especially since earlier in art. VII the "school committee" is specifically designated as being within the departmental category. Further, while this court has described school committees as "agencies of the state," we have in *Cummings* v. *Godin*, 119 R.I. 325, 377 A.2d 1071 (1977), explained that school committees are not "state agencies" because they act only on matters of local concern; and that although the committees exercise a portion of the state's power in the field of education, they are nonetheless "municipal bodies" and their employees "municipal employees." *Id.* at 330, 377 A.2d at 1073. The trial justice has misconceived the reach of art. VII.

It is obvious as one reads this article in its entirety that the framers of the charter and those who approved it intended that the town solicitor's office would serve as the sole source of legal assistance for all the various municipal boards, departments, and agencies that operate within the aegis of the Coventry charter. Among the services to be provided is

the giving of advice. If the advice is written, it becomes a public record, conceivably enabling future generations to evaluate the quality of past services rendered the town.

The mandamus issue, in our opinion, need not be resolved because it is now moot. By signing the restraining order, a Superior Court justice with one stroke of the pen granted mandatory relief and resolved the issue that the treasurer now seeks to raise. Since the $4,500 was paid to the committee, we see no necessity at this point in time in examining the various pertinent provisions to see if they would afford a basis for the action originally taken by the treasurer.

The only other question worthy of our consideration concerns that portion of the third-party complaint in which an order is requested directing Capaldi to return the retainers paid to him since late November 1976. As a general rule, when a municipal corporation has legal counsel charged with a duty of conducting the legal business of a governmental agency, contracts with other attorneys for additional or extra legal services are void. *Board of Supervisors* v. *Woodall*, 120 Ariz. 379, 586 P.2d 628 (1978); *Ashton* v. *Cook County*, 384 Ill. 287, 51 N.E.2d 161 (1943); *Cahn* v. *Town of Huntington*, 29 N.Y.2d 451, 328 N.Y. Supp. 2d 672, 278 N.E.2d 908 (1972); 10 McQuillan, *Municipal Corporations* §29.12 at 259-60 (3d ed. 1966).

There is a well-recognized exception to this principle which recognizes the implied authority of a municipal board or officer to hire counsel in the good-faith prosecution or defense of an action taken in the public interest and in conjunction with its or his official duties where the municipality's attorney refuses to act or is incapable of or is disqualified from acting. *Board of Supervisors* v. *Woodall*, 120 Ariz. 379, 586 P.2d 628 (1978); *Cahn* v. *Town of Huntington*, 29 N.Y.2d 451, 328 N.Y. Supp. 2d 672, 278 N.E.2d 908 (1972); *City of Tukwila* v. *Todd*, 17 Wash. App. 401, 563 P.2d 223 (1977). It appears that the litigants recognized the exception because in the Superior Court they filed a stipulation wherein they agreed that the trial justice could decide all

issues except

"1. Any claim by Arthur G. Capaldi for attorney's fees in this matter

"2. Any claim by Arthur G. Capaldi for prior services rendered to Coventry School Committee."

Since the stipulation casts a doubt as to the issue of Capaldi's monetary liability, we think this facet of the committee-council imbroglio would best be resolved after remand.

The defendant's appeal is sustained in regard to all issues with the exception of the trial justice's ordering of the issuance of the writ of mandamus; the plaintiff's cross-appeal is denied and dismissed; the decree appealed from is vacated in all respects; and we hereby order that upon remand the parties shall present to the Superior Court a new decree that is in conformity with this opinion.

*Bennett R. Gallo,* for plaintiff.

*Charles T. Rennick, Jr.,* for defendants.