DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of South Kingstown ("the Board"). The plaintiff, Verona Associates ("Verona"), is appealing the Board's written decision denying Verona's appeal from a decision of the Building Official and Zoning Enforcement Officer for the Town of South Kingstown ("Building Official") that denied Verona's use of its property for accessory parking. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 § 45-24-69.
 Facts/Travel
Verona owns vacant real property located at 85 Kenyon Avenue in South Kingstown, Rhode Island ("the property"). See
Application for Appeal, dated 7/11/96. The property is designated as Assessor's Lot 21 on Map 64-1[1] and is located in an R-10 Residential zoning district Id.; see also (8/29/96 Tr. at 13). Linda R. O'Neill and Marianne R. O'Neill, doing business as M L Associates, are the owners of an adjacent parcel of land designated as Lot 22, which is also located in the R-10 Residential zone.
Dr. Joseph J. O'Neill, a partner in Verona, ("Dr. O'Neill") and Doctor Robert O'Neill currently lease the building located on Lot 22 where they operate a medical office. (8/29/96 Tr. at 13). Prior to its present use as a medical office, the building located on Lot 22 was used as a dwelling. In 1969, Dr. O'Neill was permitted to convert the dwelling to a "non-resident," single physician's office. See Record of Board, dated 4/21/69. Subsequently, in 1971, Dr. O'Neill was permitted to change the building's use to "professional offices" for the two doctors. See
Records of the Board, dated 1/18/71 and 9/20/71. Thereafter, in 1991, Dr. O'Neill and Dr. Robert O'Neill were granted a special exception to construct additions, expand the parking lot, and add an additional Obstetrician to their staff. See Record of Board, dated 10/16/91; see also (8/29/96 Tr. at 4).
On or about May 24, 1994, the Building Inspector for the Town of South Kingstown ("Building Inspector") sent a Notice of Violation to Verona because Verona was parking cars on vacant Lot 21 in connection with the medical practice being operated on Lot 22. Verona appealed the Notice of Violation. After a hearing on September 6, 1994, the Board denied the appeal and held:
 ". . . the Board finds that Lot 21 is being used as a parking lot accessory to the medical office next door, that the medical office is located on a separate lot from Lot 21, and that therefore use of Lot 21 as an accessory parking lot is in violation of the Zoning Ordinance. Therefore, the Building Official's decision is upheld."
See Notice of Decision of the Board, dated 9/22/94 at ¶ 9.
Thereafter, on or about October 25, 1995, Verona's attorney, John F. Kenyon ("Kenyon"), wrote a letter to the Building Official, Russell W. Brown ("the Building Official" or "Brown"), inquiring as to whether Verona could use Lot 21 for accessory parking if Verona merged Lot 22 with Lot 21. See Letter of Kenyon, dated 10/25/95. In a letter to Kenyon dated June 13, 1996, Brown responded with the following:
 ". . . Presently, your clients have a Special Use Permit to utilize their property as a doctor's [sic] office. This Special Use Permit was granted for Lot 22 only, and it is therefore not expandable to the neighboring lot (Lot 21) because that lot was never the subject of zoning relief.
 In order for your client to place a non-permitted use on Lot 21, they would have to obtain a Use Variance or a change in the Zoning Ordinance and/or the Zoning Map."
On or about July 11, 1996, Verona filed an application with the Board to appeal the June 13, 1996 decision of the Building Official denying Verona's request to merge Lots 21 and 22 and use the portion of the premises formerly designated as Lot 21 for accessory parking. See Application, dated 7/11/96. On August 29, 1996, the Board held an advertised, public hearing to consider Verona's appeal.
Brown, the Building Official, was present at the August 29, 1996 hearing. He testified that after review of Kenyon's October 25, 1995 letter with the legal department and special counsel for his office, "it was the opinion that this could not be done because the special use was granted only for [Lot 22] and it could not be expanded into other areas or another lot . . . [Verona] would have to obtain a use variance or a change in the zoning map to a zoning designation that would allow that type of use in that zone." (8/29/96 Tr. at 4-5). Brown further explained that if the medical building was instead a residence and Verona merged the two subject lots, Lot 21 could be utilized as accessory parking for the residence, because a residence is a permitted use in an R-10 Residential zone. (8/29/96 Tr. at 6). Thereafter, Dr. O'Neill spoke on behalf of Verona, and an abutting neighbor spoke against Verona.
The Board took the matter under advisement and continued its decision until September 25, 1996. In that interim, on or about September 5, 1996, Andrew M. Teitz, Special Legal Counsel for the Board ("Teitz"), forwarded to the Board Draft Findings of Fact and Law ("Draft Findings") which concluded that the decision of the Building Official should be upheld. On September 25, 1996, the Board voted unanimously to "uphold the decision of the Building Inspector in connection with the petition of Verona . . . we uphold the decision of the Building Official made on June 13, 1996, stating that Verona cannot combine their lot with an adjacent lot which would be used for parking in an R-10 Zone . . . [w]e are incorporating the findings of fact as received from Andrew Teitz our special legal consultant, written on September 16, 1996." (9/25/96 Tr. at 13). The Board filed its written Notice of Decision, dated October 25, 1996, on or about October 28, 1996. That Decision contained the Board's findings of law and findings of fact which essentially mirrored those contained in Teitz's Draft Findings.
Verona filed the instant appeal on November 15, 1996, arguing that it was erroneous for the Board to find that the use of Lot 21 for parking is not permitted. Verona further maintains that the Board erred in its application of relevant code sections, case law, and public policy considerations.
 Standard of Review
Superior Court review of a zoning board decision is controlled by R.I.G.L. 1956 (1991 Reenactment) § 45-24-69
(D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of the zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Accessory Parking
Verona argues that Lot 21 may be used for parking, accessory to Lot 22, regardless of whether the two lots are merged or remain separate. In support of its argument, Verona relies upon sections 220 and 702 of the Ordinance.
Article 7, titled "STANDARDS FOR PARKING LOTS AND LOADING FACILITIES" provides:
 "Section 702 — Location — All parking facilities required under this Article shall be constructed on the same zoning lot containing the main use, or on abutting lots, the zoning of which permits parking . . .
Verona's proposed use of Lot 21 as a parking facility clearly does not comply with the requirement that "[a]ll parking facilities . . . be constructed on the same zoning lot containing the main use. . . ." The medical office, which is the main use, is located on zoning Lot 22. Verona contends, however, that the use of Lot 21 for parking complies with the latter requirement of section 702 which provides: ". . . . or on abutting lots, the zoning of which permits parking. . . ." (Emphasis added.) While Lot 21 does abut Lot 22, the zoning district in which Lot 21 is located does not permit off-street parking for professional uses as a primary use.
Verona argues, in the alternative, that if it is prohibited from using Lot 21 for accessory parking in the present status of the lots, it may undeniably use Lot 21 for accessory parking once the vacant lot is merged with Lot 22. In support of its argument, Verona relies upon Section 220, subsection 92.2, titled "Off-Street Accessory Parking." Pursuant to section 92.2, off-street accessory parking is permitted as of right in an R-10 zone.
Contrarily, the Board maintains that even if the two lots are merged, Verona will still be prohibited from using Lot 21 for accessory parking. The Board refers this court to Subsection 90.2, titled "Accessory Use to a Special Permit Use," to support its contention. Pursuant to 90.2, an accessory use to a special permit use is permitted only by grant of a special use permit.
Both sections 90.2 and 92.2 appear to apply to the circumstances of this case. Section 90.2 could apply if the proposed parking constitutes an "accessory use" to the medical building which is permitted only by special use permit. Section 92.2 applies if the accessory use that Verona is seeking to establish is "off-street accessory parking."
The well-settled rule in Rhode Island is that "[w]herever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision." R.I.G.L. § 43-3-26;see also St. German v. City of Pawtucket, 119 R.I. 638, 640-41,382 A.2d 180, 181 (1978). These same rules apply when a court is called upon to construe the provisions of a local ordinance.See Coventry School Committee v. Richtarik, 411 A.2d 912, 915 (R.I. 1980) (holding "[w]hen a court is called upon to-construe the provisions of a municipal charter, the usual rules of statutory construction are employed.") (citing Borromeo v.Personnel Board, 117 R.I. 382, 367 A.2d 711 (1977); Angel v.Murray, 113 R.I. 482, 322 A.2d 630 (1974)).
This Court finds that section 92.2, which is clearly the more specific of the competing ordinance provisions, controls. The entire Article 9 deals with "Accessory Uses" generally. Likewise, section 90.2 refers, only generally, to accessory "uses." Section 92.2, on the other hand, specifically identifies a particular accessory "use" — parking. Section 90.2 fails to make any reference to parking whatsoever.
Section 90.2 references the definition of "accessory use." Section 92.2, though, refers the reader directly to Article 7 which is the only Ordinance section that pertains to parking. Article 7, Section 700 provides:
 "Section 700 — General Requirements — No building or structure other than single-household dwellings shall be erected, substantially altered or its use changed, unless permanently maintained off-street parking and loading spaces have been provided in accordance with the provisions of this Ordinance. . . ."
"[T]he rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua,432 A.2d 661, 663 (R.I. 1981) (citations omitted). It would be an absurd result to have section 90.2 apply to parking. If, in fact, the general term "accessory use" were to be read to envelop parking, the Board would have the power to deny an applicant parking for any use that was granted by special use permit. At the same time, however, section 700 mandates that parking be provided. As such, section 92.2 is the provision that applies to this appeal.
The Board upheld the Building Official's determination that in order for Verona to utilize Lot 21 for parking, Verona would need to get a use variance or a zoning map change. There is absolutely no support in either the Ordinance or in the record to support such a finding.
The Board further upheld the Building Official's decision that Verona may not use Lot 21 for accessory parking if the lot remains separate from Lot 22. However, once Lots 21 and 22 come under common ownership, and Verona obtains all necessary approval from the planning board with respect to said re-subdivision, Verona would be entitled to use that portion of the newly merged lot, that was originally Lot 21, for accessory parking for the medical office. See R.I.G.L. §§ 45-23-32 (2)[2] and 45-23-37; see also South Kingstown Ordinance, Article 2, Section 250.
After a review of the entire record, this Court finds that the Board acted arbitrarily and capriciously in upholding the Building Official's June 13, 1996 decision. It acted in excess of its authority and in violation of ordinance and statutory procedure. R.I.G.L. § 45-24-69 (D). Substantial rights of the petitioner have been prejudiced. Accordingly, the Board's October 25, 1996 written decision is vacated.
After proper notice, counsel shall submit the appropriate judgment for entry.
[1] At the August 29, 1996 hearing, Verona's attorney refers to Assessor's "Plat 64-4." The property is actually located on "Map 64-1."
[2] R.I.G.L. § 45-23-32 (2) provides: "Administrativesubdivision. Re-subdivision of existing lots which yields no additional lots for development, and involves no creation or extension of streets. Such re-subdivision shall only involve divisions, mergers, mergers and division, or adjustments of boundaries of existing lots."