[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The plaintiff, Town of Johnston (hereinafter "Johnston"), has filed a complaint seeking a declaration that only the Solicitor for the Town of Johnston (hereinafter the "Johnston Solicitor") is authorized by the Home Rule Charter for the Town of Johnston (hereinafter the "Johnston Charter") to represent the School Committee for the Town of Johnston (hereinafter the "Johnston School Committee"). The defendants, Santilli, LaFazia, Voccia, Loffredo and Carlone, are members of the Johnston School Committee. Defendant Iacovelli serves as the Superintendent of the Johnston School System. The law offices of Stephen M. Robinson currently provide legal representation to the Johnston School Committee. The defendants have filed a counterclaim in which they seek a declaration relative to the alleged right of the School Committee to retain independent counsel. The plaintiff and defendants, as counterclaim plaintiffs, have also sought correlative injunctive relief.
The parties in their respective pleadings have identified specific conflicts that might give rise to the need for the Johnston School Committee to engage counsel separate from the Johnston Solicitor. The Court, however, is not being asked to rule on whether the Johnston Solicitor, in accordance with his obligation under the Rules of Professional Conduct, must step aside from representing the Johnston School Committee in the face of particular instances of conflict. Rather, all parties have sought herein a declaration of rights with regard to the engagement of counsel even in the absence of a specific conflict.
This Court will not engage in abstract consideration of potential or theoretical conflicts among Johnston, the Mayor and the Johnston School Committee. As our Supreme Court has often stated, the declaratory judgment statute is not intended to serve as a forum for the determination of abstract questions or the rendering of advisory opinions. See Lamb v. Perry, 101 R.I. 538, 225 A.2d 521 (1967). Rather, the Uniform Declaratory Judgment Act requires that there be a justiciable controversy, and that the court refrain from giving opinions in the context of hypothetical facts which are not in existence. Berberian v.Travisano, 114 R.I. 269, 3332 A.2d 121 (1975). However, against the backdrop of a history of conflict between the Johnston School Committee and Johnston as to the status of the Johnston Solicitor as exclusive counsel for the Johnston School Committee, it appears that the question raised can be said to be in the context of actual controversy, and therefore, this Court finds the issue to be justiciable.
The Court need not, and does not, reach the issue of whether there exists some generic conflict that inevitably requires the Johnston School Committee, or any school committee, to be represented by counsel other than the town solicitor. Rather, the issues raised herein should be resolved solely by a review of the provisions of the Johnston Charter and an analysis of prevailing statutory and decisional law as they relate thereto.
The facts necessary for resolution of this case are few and uncontested.[1] Since approximately 1990, the Johnston School Committee has received legal counsel and representation from attorneys other than the Johnston Solicitor. During that time, there have been many instances in which Johnston and the School Committee have been adverse parties in litigation, as well as in administrative proceedings.
Two provisions of the Johnston Charter are pertinent to the resolution of the instant case. These provisions are Sections 6-4 and 6-6. Section 6-4 reads in full as follows:
 "Sec. 6-4. Duties.
 The town solicitor shall be the attorney for the town and legal advisor to the mayor, town council, and all other departments, offices and agencies of the town government and shall direct the work of the assistant solicitors. It shall be the duty of the town solicitor to:
 (1) Appear for and protect the rights of the town in all actions, suits and proceedings, civil or criminal, in law or equity, brought by or against it or for or against any of its departments, including the board of canvassers and registration;
 (2) Examine and make recommendations in the form of all ordinances and resolutions and the form of all initiations for bids, contracts and other documents sent out by any department, office or agency of the town;
 (3) Perform such other duties appropriate to his office as the provisions of this Charter, the Mayor and/or the town council may require. (Plaintiff's exhibit A, Town of Johnston Home Rule Charter, Art. VI, Sec. 6-4).
Section 6.6 reads in full as follows:
 "Sec. 6-6. Special powers.
 The statement in this Charter of duties of the town solicitor shall not be deemed to abridge such special powers and duties as are now and hereafter conferred upon town solicitors by law; however, no department or agency shall employ any other attorney at the expense of the town or through the use of any funds from the federal government or other source, unless otherwise provided by this Charter, or unless the town council shall approve such employment by ordinance. Any such attorney so authorized by the town council shall be subordinate to the town solicitor and in all litigation to which the town may be a party, said attorney shall be under the direction of the town solicitor." (Plaintiff's exhibit A, Town of Johnston Home Rule Charter, Art. VI, Sec. 6-6).
The Johnston Charter was expressly ratified by the General Assembly in January of 1963, at which time it became effective. See P.L. 1963, ch. 187. In 1965, the Johnston Charter was amended and ratified by the General Assembly pursuant to P.L. 1965, ch. 227. Section 6-4 was included in both the 1963 and 1965 versions of the Johnston Charter.[2] In 1982, Johnston amended the Johnston Charter to include Section 6-6. Section 6-6 was not ratified by the General Assembly.[3]
 Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297
(R.I. 1980)); Super. Ct. R. Civ. P. Rule 56(c). In deciding a summary judgment motion "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citingLennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts." Id. (quoting Steinberg v. State, 427 A.2d at 340). If there are no genuine issues of material fact, the court may determine the legal issues. Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000) (citingSuperior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 632 (R.I. 1998)).
 Analysis The Legal Status of the Johnston School Committee
Pursuant to article XII of the Rhode Island Constitution, the State of Rhode Island is charged with the responsibility of educating its children. This responsibility has been delegated by the State to local school committees. In Johnston, the Johnston School Committee is comprised of five members elected by the people of Johnston biennially.See Plaintiff's exhibit A, Town of Johnston Home Rule Charter, Art. XV, Sec. 15-1. Having been delegated this state responsibility, school committees act as agents of the State, and not as agents of the municipality. Coventry Sch. Comm. v. Richtarik, 122 R.I. 707, 712,411 A.2d 912, 914 (1980) (citing Cummings v. Godin, 119 R.I. 325,377 A.2d 1071 (1977)). In Cummings, however, the court distinguished between "an agent of the state" and a "state agency." Cummings, 119 R.I. at 330, 377 A.2d at 1073. The former manages matters of local concern, whereas the later possesses "statewide authority" and performs a "statewide function." Id. "Thus, the school committees, although exercising a portion of the state's power over education, are, nonetheless, municipal bodies . . ., acting as agent for the state in that they exercise state power that has been delegated to them by the state." Id. at 330-331, 377 A.2d 1073.[4]
Although school committees are agents of the state, they perform the state function of educating children residing in specific communities. It is this function which places school committees in a unique position, unlike any other municipal agency or department. In that respect, school committees are sui generis; when performing their delegated responsibilities of educating children, they are legally neither a state agency nor a municipal department.
The independent and unique nature of the Johnston School Committee is clearly evinced by Title 16 of the Rhode Island General Laws[5] and the Johnston Charter.[6] According to § 16-2-9 and the Johnston Charter, the Johnston School Committee is responsible for the entire care and control of the schools, including personnel, administration, third-party contract negotiation, and budget allocation. In contrast, municipal agencies are subject to executive control and supervision as defined under the Johnston Charter. The Charter repeatedly delegates certain responsibilities to town departments, yet limits those powers by vesting ultimate supervision and control in the mayor.[7]
Accordingly, the autonomy granted to school committees by state law and to the Johnston School Committee by the Johnston Charter, coupled with the constitutional derivation of school committee authority, leads this Court to find that the Johnston School Committee is unique and distinguishable from other municipal departments and agencies.
 The Johnston School Committee's Right to Seek Independent Counsel
The Rhode Island Supreme Court also has analyzed the unique function and resultant autonomy of school committees. As a result of the state function performed by school committees, the authority retained by school committees may not be abrogated by municipalities absent express validation by the General Assembly. Royal v. Barry, 91 R.I. 24, 30,160 A.2d 572, 575 (1960). In explanation of the above-mentioned proposition, the court in Royal stated:
 "no provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly. In other words a school committee's exercise of its powers cannot be regulated by local legislation whether by ordinance or charter. The intendment of article XXVIII of amendments to the state constitution, `Home Rule For Cities And Towns,' as expressed in § 1 thereof, is to grant and confirm the right of self-government by home rule charter in all local matters. Article XII of the constitution expressly and affirmatively reserves to the legislature sole responsibility in the field of education and nothing contained in article XXVIII is in derogation thereof." Id. at 30-31, 160 A.2d at 575.
Our Supreme Court analyzed a school committee's right to seek counsel independent of the town solicitor in Coventry School Committee v.Richtarik, 122 R.I. 707, 411 A.2d 912 (1980). In that case, the Coventry School Committee sought to enjoin the Town of Coventry from "interfering with the committee's selection of a counsel of its own choice," despite a directive in the Home Rule Charter for the Town of Coventry (hereinafter the "Coventry Charter") requiring the committee to utilize the services of the Coventry town solicitor. Id. at 708, 411 A.2d at 912.
The facts of Ritchtarik were summarized by the court. In the years preceding the institution of the lawsuit, Coventry and the Coventry School Committee enjoyed a "harmonious" relationship. Id. at 709, 411 A.2d at 913. Various Coventry solicitors served as counsel to the Coventry School Committee during those years without opposition. Id. The controversy arose in 1976, when the Coventry School Committee voted to retain the services of a former assistant solicitor. Id. at 710, 411 A.2d at 913. However, Coventry intervened in the Coventry School Committee's decision and directed the Coventry School Committee to utilize the services of the newly appointed solicitor. Id. The Coventry School Committee refused to comply with Coventry's directive, and Coventry refused to pay the former solicitor for services performed. Id.
To determine whether the Coventry Charter authorized the Coventry School Committee to engage its own counsel, our Supreme Court looked to the language of the Coventry Charter. Id. at 713, 411 A.2d at 915. Specifically, the Coventry Charter stated:
 "(1) `The town solicitor shall serve as chief legal advisor to the council and to the town manager;
 (2) `[the] town solicitor shall appear for and protect the rights of the town in all actions, suits, or proceedings, civil or criminal, in law or equity, brought by or against it, or for or against any of its departments, offices or agencies, including the council, the manager and the school committee;
 . . . .'" Id. at 711, 411 A.2d at 914 (emphasis added).
The court, in its analysis of the applicability of the Coventry Charter, noted: "[No] provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act ofthe general assembly." Id. at 713, 411 A.2d at 915 (emphasis added) (quoting Royal v. Barry, 91 R.I. 24, 30, 160 A.2d 572, 575 (1960)). The court recognized that the General Assembly had in fact expressly validated the Coventry Charter, which specifically designated the Coventry School Committee as a department subject to representation by the Coventry solicitor. Richtarik, 122 R.I. at 713, 411 A.2d at 915. Therefore, the court found that since the Coventry Charter was validated by the General Assembly, the Coventry Charter provisions relative to legal counsel were controlling on the Coventry School Committee. See Id.
at 713, 411 A.2d at 915. The Coventry solicitor, therefore, was required to serve as the "sole source of legal assistance" for the Coventry School Committee, unless the "municipality's attorney refuses to act or is incapable of or is disqualified from acting." Id. at 714-715, 411 A.2d at 915-916.
The facts and circumstances presented in Richtarik are distinguishable from those in the instant case in two important respects. In Richtarik,
the Coventry Charter, which directed that the Coventry solicitor be the sole representative, was expressly ratified by the General Assembly.Richtarik, 122 R.I. at 713, 411 A.2d at 915. Furthermore, the Coventry Charter expressly included a directive that the Coventry solicitor act as a representative of the Coventry School Committee. Id. Thus, this Court must follow the analytical framework enunciated in Richtarik and Royal to determine if the General Assembly expressly validated provisions of the Johnston Charter which serve to constrain the independence of the Johnston School Committee relative to its legal representation.
Section 6-6 of the Johnston Charter never received express validation or ratification by the General Assembly.[8] Although Section 6-4 of the Johnston Charter has been specifically validated by the General Assembly, that provision, unlike the Coventry Home Rule Charter provision analyzed by the court in Ritcharik, does not explicitly refer to the Johnston School Committee as a department of the Town subject to exclusive representation by the Johnston Solicitor. Simply put, the General Assembly has not given its express validation to any provision of the Johnston Charter which could be construed to limit the Johnston School Committee relative to its source of legal representation. Although the court in Ritcharik made clear that a municipality may draft its charter to require exclusive representation by the town solicitor, it must do so unambiguously and, in the case of a school committee, with the express ratification of the General Assembly. This has not been done in Johnston.
 Conclusion
This Court finds that the provisions contained within the Johnston Charter, which require the Johnston Solicitor to be the exclusive counsel to municipal departments and agencies of Johnston, are not applicable to the Johnston School Committee. Therefore, the Johnston School Committee is not prohibited by the Johnston Charter from engaging counsel independent of the Johnston Solicitor. Consistent with this decision, summary judgment shall enter on behalf of the defendants.
Counsel shall present an appropriate order and judgment for entry.
[1] In connection with the cross motions for summary judgment, the defendants set forth a "Statement of Undisputed Facts." See Defendants' Memorandum in Support of Motion for Summary Judgment at 2. The plaintiff has agreed to the facts recited by the defendants, except that it disputes those set forth in Paragraphs 9, 41, 42, 47, 48 and 49. See
Plaintiff's Memorandum in Support of Town of Johnston's Motion for Summary Judgment at 2. These disputed issues of fact are not material to the Court's determination and therefore do not affect the Court's resolution by way of summary judgment.
[2] A comparison of the language of Section VI — 4 of the Johnston Charter as ratified by the General Assembly in 1965 and Section 6-4 of the current Johnston Charter reveals differences which are inconsequential to the outcome of this decision. Therefore, this Court will rely on the language of Section 6-4 as it appears in the current Johnston Charter.
[3] There is no public law, act, or resolve of the General Assembly ratifying the provisions of Section 6-6 of the Johnston Charter as amended in 1982.
[4] "Recently as well as in the past, this Court has reminded those so interested that, because of art. XII of the Rhode Island Constitution, public education is the responsibility of the state, specifically, the General Assembly; and the various municipal school committees, when discharging their responsibilities, act as agents of the state."Richtarik, 122 R.I. at 712, 411 A.2d 914. (citing Cummings v. Godin,119 R.I. 325, 377 A.2d 1071 (1977); Royal v. Barry, 91 R.I. 24,160 A.2d 572 (1960); City of Pawtucket v. Pawtucket Teachers' Alliance,87 R.I. 364, 141 A.2d 624 (1958)).
[5] Most significantly, G.L. 1956 § 16-2-9 defines the general powers and duties of school committees. Section 16-2-9 imparts the "entire care, control, and management of" public schools to school committees. Although school committees may delegate certain responsibilities to the superintendent (See § 16-2-9 (23)), its control and management are not constrained by supervision of the mayor or other municipal executives.
[6] Article XV, Section 15-5 of the Johnston Charter corresponds to §16-2-9. It, like § 16-2-9, grants extensive powers and duties to the Johnston School Committee, affording the Johnston School Committee a considerable level of autonomy. See Plaintiff's exhibit A, Town ofJohnston Home Rule Charter, Art. XV, Sec. 15-5.
[7] The Johnston Charter contains numerous examples of agencies which, unlike the Johnston School Committee, are required to seek mayoral review and/or approval in performing their duties. These agencies, which are supervised and ultimately controlled by the mayor, include: the Department of Public Welfare (See Plaintiff's exhibit A, Town of JohnstonHome Rule Charter, Art. XIV, Sec. 14-2), the Fire Department (See Id. at Art. XII, Sec. 12-2), the Police Department (See Id. at Art. XI, Sec. 11-2), the Department of Public Works (See Id. at Art. X, Sec. 10-2), and the Planning Board (See Id. at Art. XVII, Sec. 17-2).
[8] Section 6-6 of the Johnston Charter contains language that prohibits any department or agency from employing an attorney other than the town solicitor. Although Section 6-4 identifies the town solicitor as the attorney for all departments, offices and agencies of the town, it does not contain the prohibitory language of Section 6-6.